**[J-80-2012]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 564 CAP |
| | : | |
| Appellee | : | Appeal from the Order of the Court of |
| | : | Common Pleas of Philadelphia County, |
| | : | Criminal Division, dated November 16, |
| v. | : | 2007 at No. CP-51-CR-1024821-1988 |
| | : | |
| | : | |
| ANTHONY REID, | : | |
| | : | SUBMITTED: June 20, 2012 |
| Appellant | : | |

**OPINION**

**MADAME JUSTICE TODD**           **DECIDED: August 20, 2014**

This is a capital appeal from the order of the Court of Common Pleas of Philadelphia County denying Appellant Anthony "Tone Bey" Reid's petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. For the reasons that follow, we affirm the order of the PCRA court.

**I. Background**

The facts underlying Appellant's sentence are more fully discussed by our Court on Appellant's direct appeal. Commonwealth v. Reid, 642 A.2d 453 (Pa. 1994). A brief summary of the facts, however, is required for our resolution of Appellant's collateral challenge to his conviction and sentence.

The evidence adduced at trial, and summarized in Reid, provides that on July 9, 1988, Mark Lisby ("the victim") took approximately $500 worth of crack cocaine capsules ("caps") from his uncle Terrance Lisby ("Lisby"). The victim informed Lisby the next day that he had used the caps, but did not have the money to pay Lisby. Lisby worked for Lawrence Boston selling crack cocaine, and both of these individuals were attempting to obtain membership in the Junior Black Mafia ("JBM"), a Philadelphia-based crime syndicate. Boston and Lisby, in turn, worked for JBM member Kevin Bowman. Once the victim understood that Bowman would be upset regarding the missing drugs, he met with Bowman to explain the situation, and offered to make up for the lost income the following week.

Two days later, Boston, who had not been paid by Lisby for the drugs, appeared at the victim's house at 2444 North Stanley Street in Philadelphia. Boston was joined by Appellant, who was a member of the JBM. After a brief conversation, Appellant, Boston, and the victim left the house and began walking west on Cumberland Street. As the men approached the intersection of Cumberland Street and 31st Street, Appellant drew a weapon and shot the victim once in the center of his chest, once in his upper right chest beneath the collar bone, and once in the back of his right leg. The victim died as a result of his wounds. Important for certain issues discussed below, at Appellant's first trial, Lawrence Boston testified as an eyewitness. At Appellant's second trial, Boston invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, and, after establishing Boston was unavailable, Boston's testimony from his first trial in which he inculpated Appellant as the shooter was read into the record. Further, Michael Dozier testified that he witnessed the murder and that Appellant shot the victim.

After Appellant's arrest, he was charged with murder of the first degree,[1] carrying a firearm without a license,[2] possessing an instrument of crime,[3] and criminal conspiracy.[4] In December 1989, Appellant was brought to trial before Philadelphia Court of Common Pleas Judge Albert Sabo and a jury. The jury found Appellant guilty of criminal conspiracy, but was unable to reach a verdict on the remaining charges. Appellant was retried from December 12, 1990 through January 9, 1991, and convicted of the remaining charges.

During the penalty phase, the Commonwealth provided evidence that Appellant had been convicted of the March 13, 1989 murder of Neil Wilkinson and shooting of Darryl Woods, and the murder of Michael Waters, a 16-year-old boy, who had thrown snowballs at Appellant's car. The jury was also informed of Appellant's prior conspiracy conviction at his first trial in this matter. The record of the guilt trial was incorporated into evidence at the penalty phase. While the trial court refused to allow Appellant to present evidence regarding his specific religion (Muslim), he was permitted to explain that he had embraced a religious philosophy that had endorsed morality and that requires one to change and reform, and that he had become a new person as a result of his religion. He also presented background character evidence and his age at the time of his murder, 20 years old. Appellant did not testify. At the conclusion of the penalty trial, the jury found one aggravating circumstance — Appellant had a significant history of felony convictions involving the use or threat of violence to the person[5] — and no

---

[1] 18 Pa.C.S.A. § 2502(a).
[2] 18 Pa.C.S.A. § 6106.
[3] 18 Pa.C.S.A. § 907.
[4] 18 Pa.C.S.A. § 903.
[5] 42 Pa.C.S.A. § 9711(d)(9).

mitigating circumstances,[6] mandating the imposition of the death penalty. Thereafter, Appellant was sentenced to death for the first-degree murder conviction, 2½ to 5 years imprisonment for the possession of an instrument of crime count, 2 ½ to 5 years imprisonment for the carrying a firearm without a license count, to run consecutive to each other and the sentence of death, and 5 to 10 years imprisonment for the criminal conspiracy count from Appellant's first trial, to run consecutive to all other sentences. On direct appeal, Appellant was represented by his trial counsel, Samuel Stretton, Esquire. This Court affirmed Appellant's judgments of sentence. Reid, 642 A.2d at 463.

Appellant filed a timely *pro se* PCRA petition on December 12, 1996. Collateral review was assigned to the Honorable James Lineberger. Present appellate counsel, Daniel Silverman, was appointed on February 23, 1998. On January 27, Appellant filed an Amended PCRA Petition ("Amended Petition"). Subsequently, Appellant filed a Supplemental Amended PCRA Petition on April 15, 1999, a Second Supplemental Reproduced Record on May 3, 1999, a Second Supplemental Amended PCRA Petition on July 11, 2000, a Third Supplemental Amended PCRA Petition on February 13, 2001, a Petition to Review Police Archives on September 26, 2002, and an Addendum to the Amended Supplemental PCRA Petition on March 29, 2004. The Commonwealth, on November 21, 2001, filed a motion to dismiss Appellant's petition. As discussed more fully below, there is no indication that Appellant was granted permission to file late petitions or to submit amended petitions.

On May 6, 2005, the PCRA court entered a Notice to Dismiss pursuant to Pa.R.Crim.P 907, finding Appellant's PCRA petition to be without merit. Appellant objected, and, as explained more fully below, on July 8, 2005, the Commonwealth by

---

[6] Appellant requested the jury to find two mitigating circumstances, the age of the defendant, and the "catch-all" mitigator. 42 Pa.C.S.A. § 9711(e)(4), (8).

letter agreed to a hearing on certain issues.[7]  On August 19, 2005, the PCRA court entered an order scheduling a hearing, so limited, but Appellant opposed the Commonwealth's proposal, and no hearing was conducted.  Subsequently, Judge Lineberger retired, and the appeal was reassigned to Judge William Mazzola.  Thereafter, Appellant filed additional motions, *inter alia*, for recusal, expert funds, and discovery regarding his Batson claims.  The Commonwealth filed a response, in addition to a motion to dismiss.  By order dated October 17, 2007, the PCRA court denied the request for a hearing and expert funds.  Two days later, the court issued a notice of intent to dismiss.  Thereafter, the PCRA court formally dismissed Appellant's petition.

On August 28, 2009, Appellant filed a Pa.R.A.P. 1925(b) statement, followed by a Supplemental Statement on September 10, 2009, and a Final Statement on October 1, 2009.[8]  On March 8, 2011, the PCRA court filed an extensive 260-page opinion addressing Appellant's claims in both this appeal and Appellant's collateral appeal regarding the Waters murder.[9]

## II. Analysis

In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is "supported by the record and free of legal error."  Commonwealth v.

---

[7] These issues involved Appellant's claim pursuant to Batson v. Kentucky, 476 U.S. 79 (1980); new penalty phase witnesses; and after-discovered recantation witnesses.

[8] Again, there is no indication that Appellant was granted leave to supplement.

[9] Appellant was convicted of first-degree murder, criminal conspiracy, possession of an instrument of crime, and carrying a firearm without a license in the Waters matter.  On direct appeal, this Court affirmed Appellant's judgment of sentence.  Commonwealth v. Reid, 626 A.2d 118 (Pa. 1993).  Appellant filed a PCRA petition in that case, which was dismissed on November 16, 2008, along with Appellant's PCRA petition in the instant case.  Appellant's appeal from the dismissal of his PCRA petition in the Waters case is found at No. 563 CAP; J-79-2012.

Rainey, 928 A.2d 215, 223 (Pa. 2007). Counsel is presumed to be effective, and a petitioner has the burden to establish counsel was ineffective. Commonwealth v. Miller, 819 A.2d 504, 517 (Pa. 2002). To overcome this presumption, and to be entitled to PCRA relief, a petitioner must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.A. § 9543(a)(2); his claims have not been previously litigated or waived; and the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. Id. § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [the appellant] could have had review as a matter of right has ruled on the merits of the issue." Id. § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." Id. § 9544(b).

In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Pennsylvania, we have applied the Strickland test by requiring a petitioner to establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001). Again, counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the Strickland test, the court may dismiss the claim on that basis. Commonwealth v. Ali, 10 A.3d 282, 291 (Pa. 2010).

Important for our review, Appellant's direct appeal was resolved before our Court's decision in Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002). In Grant, our Court abrogated the rule that ineffectiveness claims must be raised at the first opportunity where a defendant has obtained new counsel. Under the pre-Grant rule, however, an appellant was not required to raise ineffectiveness claims until he obtained new counsel. Commonwealth v. Hubbard, 372 A.2d 687 (Pa. 1977). The underlying theory of such an approach was that it is unrealistic to expect appellate counsel to raise his or her own ineffectiveness. Commonwealth v. Kimball, 724 A.2d 326, 332 (Pa. 1999). Here, as noted above, trial was held in late 1989 and early 1991, and Appellant was represented at trial by Samuel Stretton, Esquire. Attorney Stretton also represented Appellant on direct appeal. Finally, because this matter pre-dates Grant, and trial counsel represented Appellant on direct appeal, for any claim of trial counsel ineffectiveness that was not offered on direct appeal, which might otherwise be deemed to be waived, and which would necessitate "layering" as explained in Commonwealth v. McGill, 832 A.2d 1014 (Pa. 2003), such layering is not required, as this was Appellant's first opportunity to challenge trial counsel's stewardship, as well as a failure of appellate counsel (here the same) to preserve issues on direct appeal. See Commonwealth v. Sepulveda, 55 A.3d 1108, 1117 n.7 (Pa. 2012).

Furthermore, as noted above, Appellant has filed a series of supplemental PCRA petitions. The Commonwealth offers, and the PCRA court found, that the record does not indicate that Appellant ever sought or received permission to file serial amended petitions. Brief of Commonwealth at 7. Under our Rules of Criminal Procedure, "[t]he judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A).

In its opinion in this case, the PCRA court recognized the plethora of supplements filed in this case, and observed:

> [I]n no case is there any indication of a court being requested to grant or otherwise granting permission to file late petitions or to submit amended ones, let alone establishing a time frame within which to do so. It should therefore be incumbent upon the defendant to explain why any of his various submissions should be considered in the first place. We realize of course that there have been several status listings of both cases, the proceedings and outcome of most of which do not appear of record. It is possible that the court may have entertained and extended off-the-record accommodations, but, if that were the case, the defendant should have clarified those omissions by utilizing the procedures for establishing a reconstructed record. Not having done so, the black letter law would seem to require an outright dismissal of the petitions at issue. Again, however, recalling the Court's inclination to liberality in these proceedings, this court will, of course, address all of the issues raised by the submissions, limited to those particular issues addressed by the defendant's statement of matters complained of on appeal.

PCRA Court Opinion, 2/14/11, at 17.

Notwithstanding the PCRA court's indulgence in addressing all of Appellant's claims, it was Appellant's duty to identify where in the record the supplemental petitions were authorized and/or reconstruct the record if such authorization was provided off the record. Appellant has failed to do so, even though this defect was raised by both the PCRA court and the Commonwealth. This Court has condemned the unauthorized filing of supplements and amendments to PCRA petitions, and has held that such claims raised in such supplements are subject to waiver. See Commonwealth v. Elliott, J-81-2013 (on November Vote List); Commonwealth v. Roney, 79 A.2d 595, 615 (Pa. 2013); Commonwealth v. Porter, 35 A.3d 4, 12 (Pa. 2012). Thus, although the vast majority of Appellant's claims were raised in his first counseled Amended Petition,

certain claims, which are discussed below, were raised for the first time in an apparently unauthorized supplemental petition; accordingly, we find those claims to be waived.

## A. Exculpatory Witnesses

Appellant first argues that trial counsel was ineffective, as he failed to investigate and present the testimony of what he asserts to be "exculpatory" witnesses. In sum, Appellant submits the "sworn declarations" of seven potential witnesses, who claim that: Boston was the shooter; Dozier did not witness the murder; or that it was not Appellant who murdered the victim.[10] Appellant asserts that all of these witnesses were available at the time of trial, their identities should have been discovered, there was no reasonable basis for counsel to fail to investigate and obtain these witnesses' statements, and that he was prejudiced by trial counsel's failure to obtain the testimony from these witnesses. Moreover, Appellant faults the PCRA court for failing to hold an evidentiary hearing on this claim. Appellant requests an evidentiary hearing to resolve the "material issues of fact" implicated by this claim.

There are two requirements for relief on an ineffectiveness claim for a failure to present witness testimony. The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." 42 Pa.C.S.A. § 9545(d)(1);

---

[10] The PCRA court noted initially that while Appellant claimed to offer "affidavits" (or "sworn declarations") from these individuals, except for that of Damien Williams, they were not sworn by the declarant before an officer authorized to administer oaths or witnessed. The court went on to determine that, even assuming the truth of the declarations, Appellant's claim of ineffective assistance of counsel failed. See Commonwealth v. Brown, 872 A.2d 1139, 1169-70 (Pa. 2005) (Castille, C.J., concurring) (offering unwitnessed and unsworn non-affidavits are of considerably less value than sworn affidavits and questioning whether such pleadings should be relevant to issue of entitlement to evidentiary hearing).

Pa.R.Crim.P 902(A)(15). The second requirement is substantive. Specifically, when raising a claim for the failure to call a potential witness, to obtain relief, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have known of the existence of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial. Commonwealth v. Carson, 741 A.2d 686, 707 (Pa. 1999)

Appellant, without explanation, failed to include in his PCRA petition certification information that satisfied the certification requirements of Section 9545(d)(1) or Rule 907(A)(15), with the exception of the affidavit of Damien Williams. Appellant's failure to comply with the simple and straightforward rules governing entitlement to an evidentiary hearing should preclude Appellant's requested relief of an evidentiary hearing. Moreover, although the Commonwealth did not object to a hearing on certain after-discovered/recantation witnesses, Appellant refused such a hearing. Even if such foundational and simple requirements can be overlooked, and even if we overlook Appellant's rejection of the Commonwealth and the PCRA court's offer of a hearing on at least certain of these witnesses, as discussed below, Appellant has failed to satisfy the further requirements for relief. Specifically, globally speaking, for each proposed witness, Appellant fails to indicate how counsel was informed or should have known of the existence of these witnesses, and the witnesses' willingness to cooperate and to testify on Appellant's behalf. Before our Court, Appellant does not attempt to explain his failure to comply with the PCRA or our Rules. These failures are fatal to his claim. See Commonwealth v. Bryant, 855 A.2d 726, 748 (Pa. 2004) (failure to make proffer as to whether witness was willing and able to testify was factor regarding ineffectiveness claim for failure to call a witness). Thus, on this basis alone, Appellant is not entitled to

relief. Nevertheless, after individualized consideration of each of the witnesses trial counsel allegedly failed to present, they do not bring the reliability of the death verdict into legitimate question, and, thus, conclude that Appellant is not entitled to relief. We address each witness in turn.

### 1. Kevin Bowman

Appellant first claims Boston confessed to Kevin Bowman that he, and not Appellant, shot the victim; that Boston shot the victim out of fear of being attacked; and that Boston had a weapon and Appellant did not. Additionally, Appellant claims that Bowman would have purportedly testified that Michael Dozier, a witness to the shooting who testified at Appellant's trial, told Bowman, contrary to his trial testimony, that he did not actually see the shooting.

The Commonwealth points out that Bowman, along with Appellant, was convicted of the murder of Neil Wilkinson. Further, the Commonwealth offers, as noted above, that Boston worked for Bowman, who was a JBM member. The Commonwealth argues that, in 1999, Bowman claimed that Boston told him, in front of Appellant, that he shot the victim. The Commonwealth asserts that Appellant, however, does not explain why he waited more than 10 years to provide this information, whether Bowman would have been willing to cooperate or testify on Appellant's behalf, and whether Appellant ever informed trial counsel of Bowman's conversation with Boston. Finally, the Commonwealth maintains that, because Bowman's statement is hearsay, it is inadmissible and Appellant could not be prejudiced by trial counsel's failure to use that statement. The PCRA court rejected the claim, noting the hearsay nature of the proffered statements, that there was no indication the information was available for trial or that trial counsel could have discovered such information, that it would have been

used only for impeachment purposes, and that it was cumulative of Boston's prior inconsistent statements.

As offered by the Commonwealth, and noted by the PCRA court, Bowman's testimony would have constituted hearsay. Hearsay is inadmissible and, thus, Appellant's claim fails on the merits. See Commonwealth v. Puksar, 951 A.2d 267, 278 (Pa. 2008). Moreover, while Bowman signed a statement claiming Boston's confession was made to Bowman in front of Appellant, Appellant in his PCRA petition never claimed that he informed trial counsel of Bowman's supposed conversation in which Boston confessed to being the shooter. Likewise, the failure to show that Bowman would have been willing to cooperate and testify on Appellant's behalf also defeats Appellant's claim of ineffectiveness.

### 2. Darryl Gray

Appellant also points to Darryl Gray, whom Appellant submits was an eyewitness to the shooting, and who claims that, while Appellant was present when the victim was shot, it was another man who fired the gun. Moreover, Appellant offers that Gray saw Dozier immediately after the shooting, at which time Dozier asked, "What happened?" The implication of this statement was that Dozier did not see the murder. The Commonwealth responds that, while in prison in 1999, Gray claimed to have been an eyewitness to the shooting, but there is no indication as to why Gray waited more than 10 years to come forward. Further, the Commonwealth argues that Appellant does not allege he informed trial counsel of this witness. The PCRA court rejected this claim, finding that Appellant failed to state that Gray would have been willing to cooperate and to testify on Appellant's behalf.

Gray's statement is similar to that offered by Bowman, and fails for the same reasons. With respect to his testimony regarding Dozier, it is pure hearsay, and, thus,

cannot support a claim that trial counsel was ineffective for failing to present it. Puksar, supra. Moreover, because Gray fails to indicate he would be willing to cooperate and testify on Appellant's behalf, Appellant's claim fails on that basis as well.

### 3. Robert Durand and Frank Bynum

Appellant submits that Robert Durand, an investigator for the Federal Court Division of the Defender Association of Philadelphia, would testify, *inter alia*, that Frank Bynum told him that Boston confessed to Bynum that Boston shot the victim and that he did so because he was in fear of being attacked. Also, Appellant offers that Bynum stated to Durand that eyewitness Dozier was a heavy user of crack cocaine and had been smoking crack for days before the murder. According to Durand, while Bynum did not dispute the accuracy of these statements, Bynum refused to sign an affidavit and refused to testify. As noted by the Commonwealth, the PCRA court found the statements of both Durand and Bynum to be hearsay, but, also, that Bynum could only hurt Appellant's case because, if he testified, he would have been open to potentially detrimental cross examination, including that Bynum was with Appellant when Appellant admitted that he killed the victim, that Bynum was a JBM member who threatened Dozier at gunpoint after he testified against Appellant, and that Bynum shot Randall and Terrance Lisby when they confronted Boston about the victim's murder.

The PCRA court's hearsay analysis concerning both Durand's and Bynum's testimony is correct, with Durand's assertions constituting double hearsay; accordingly, trial counsel was not ineffective for failing to provide such testimony. See Puksar. Moreover, Durand's statements do not explain how counsel was informed or should have known of the existence of these witnesses, and the witnesses' willingness to cooperate and to testify on Appellant's behalf. For all of these reasons, Appellant is not entitled to relief on this claim.

### 4. Kevin Brown

Appellant contends that Kevin Brown would testify that Bowman's trial testimony was untrue, and that it was common knowledge in his neighborhood that Boston shot the victim. As noted by the Commonwealth, Brown was a JBM drug dealer who grew up with the victim and Appellant. At trial, Brown testified that he loaned Appellant his bicycle which was found at the scene of the murder, and that he heard Appellant state, "get down or lay down," which, according to him, was a warning to the victim to cooperate with the JBM or he would be killed. The Commonwealth adds that, on cross-examination, Appellant accused Brown of implicating Appellant to gain favorable treatment in his own criminal case and impeached him with inconsistencies between his statement and his testimony. The PCRA court found Brown's statements to be hearsay, insignificant in light of two witnesses to the murder who had not recanted, and lacked any indication Brown would have provided this information at trial.

Appellant fails to provide how counsel should have been aware of this post-trial recantation. Indeed, we find it hard to understand how counsel could be deemed to be ineffective for not eliciting the recantation testimony that Brown, who was a prosecution witness at trial, would provide a decade after trial.[11] Finally, Brown did not indicate that he would be willing to cooperate with the defense or to testify on behalf of Appellant. Appellant is not entitled to relief on this claim.

### 5. Willie Brown

Appellant also submits Willie Brown witnessed the shooting, stated that Appellant was not the shooter, and that Dozier did not witness the events. The Commonwealth

---

[11] In his brief to our Court, Appellant does not argue that these statements constitute "newly discovered" evidence, but complains that counsel was ineffective for failing to present exculpatory evidence. Thus, we will address these questions as framed by Appellant.

notes that Brown did not offer why he failed to come forward earlier in support of Appellant, and did not indicate that he would be willing to cooperate with the defense or to testify on behalf of Appellant. Further, the Commonwealth argues that Appellant, who was present at the scene, failed to indicate that he informed trial counsel about this witness. The PCRA court offered that Brown's claims are questionable regarding the factual basis for his observations, as he knew both Appellant and Boston, but referred to them as the "shooter and the other man," and provided that, even if Appellant were not the shooter, there was sufficient evidence to convict him as an accomplice.

As Brown did not explain why he failed to come forward earlier in support of Appellant, and did not indicate that he would be willing to cooperate with the defense or to testify on behalf of Appellant, and, because Appellant failed to establish how counsel was informed or should have known of the existence of the witness, we find Appellant failed to establish that trial counsel was ineffective and is not entitled to relief on this claim. Moreover, we note that Appellant failed to include this witness in his "Statement of Matters Complained of Pursuant to Rule 1925(b)," and it was not until a subsequent "Supplemental Statement," which was filed seemingly without leave of court, was this name added. For all of these reasons, Appellant's claim fails.

### 6. Randall Lisby

Appellant merely offers that Randall Lisby, the victim's brother, "is on record for saying numerous different things about what he was or knew about the killing of his brother - including a shifting 'identification' of the shooter and what if anything was ever 'confessed' to him by [Appellant] or anyone else." Brief of Appellant at 12. According to the Commonwealth, Randall Lisby gave a statement to police that Appellant told him he killed the victim, he was a member of the JBM, and that the drug-related killing was because Appellant "had a job to do." Brief of Commonwealth at 17. Initially, while Lisby

presently recants this statement, he did not aver he had been willing to cooperate with the defense and to testify on behalf of Appellant. Moreover, like Brown, Randall was a witness at trial and Appellant engaged in cross-examination of him. Trial counsel elicited, *inter alia*, that Randall did not mention that Appellant had confessed to him at Appellant's earlier trial, did not tell police about Appellant's confession, and had indicated Bynum had killed the victim. As counsel had no reason to investigate Randall as a potential defense witness, let alone not foreseeing Randall's recantation, we find that Appellant has failed to establish that trial counsel was ineffective and that he is not entitled to relief.

### 7. Damien Williams

Finally, Appellant offers that Damien Williams heard on the street that Boston stated that he lied to save himself from a potential sentence of life imprisonment. Evidently, Williams confronted Boston with these allegations in 1992 and Boston confirmed that he had lied. While Appellant claims that "[t]his evidence was available at the time of trial," Brief of Appellant at 12, the Commonwealth notes that these statements allegedly were made by Boston to Williams nearly two years after Appellant's trial, and, thus, could not serve as a basis for an ineffectiveness of counsel claim. Again, before us, Appellant makes no claim with respect to after-discovered evidence. Moreover, William's statements regarding the "word on the street," constitute inadmissible hearsay. Finally, no assertion is offered that Randall was prepared to cooperate and would have testified on Appellant's behalf. For all of the above-stated reasons, Appellant fails to establish his claim of trial counsel ineffectiveness.

### B. Conflict of Interest

At his first trial, Appellant was represented by Harry Seay, Esquire. Lawrence Boston, who, as noted above, was with Appellant at the time of the shooting, testified

against Appellant, claiming Appellant was the shooter. Boston was cross-examined by Attorney Seay. At Appellant's second trial, at which he was represented by Samuel Stretton, Esquire, Boston exercised his Fifth Amendment privilege against self-incrimination and did not testify. The trial court declared Boston unavailable, and Boston's testimony from Appellant's first trial was read into the record.

According to Appellant, at the time of his first trial, Attorney Seay was either concurrently representing Boston, or had previously represented Boston. This, according to Appellant, was a conflict of interest and resulted in Boston not being fully cross-examined by Attorney Seay at his first trial. While trial counsel at Appellant's second trial objected that Boston was not "unavailable," Attorney Seay's alleged conflict of interest, which allegedly resulted in the lack of a full and fair opportunity to confront Boston, was not raised. Appellant maintains that, because Attorney Seay represented Boston at Appellant's first trial, Attorney Seay could not have attempted to show that Boston was the actual murderer or to otherwise impeach his testimony. Thus, Appellant claims that trial counsel at his second trial was ineffective for failing to allege a conflict of interest with prior counsel. Appellant adds that there was no tactical basis for failing to object, and that he suffered prejudice as a result of counsel's failure because, had Boston's testimony been excluded at Appellant's second trial, he likely would have been acquitted. Finally, Appellant urges that, even if there was an attorney-client relationship between Boston and Seay prior to trial, issues of fact regarding that relationship remain and an evidentiary hearing is required.

The Commonwealth contends first that Attorney Seay did not represent Appellant and Boston at the same time. While Attorney Seay had represented Boston at the preliminary stages of an assault case, he did not represent Boston at Appellant's first trial. Further, the Commonwealth asserts that Appellant did not lack a full and fair

opportunity to cross examine Boston, as Attorney Seay "aggressively and extensively" cross-examined him. Brief of Commonwealth at 21. Finally, the Commonwealth contends that Appellant has failed to allege any deficiencies in that cross-examination, and, thus, he has failed to establish prejudice.

The PCRA court found that there was no evidence that Attorney Seay represented Boston in this matter. Further, the PCRA court found "no actual conflict of interest existed in any event; even if Attorney Seay did at one time represent Boston, that representation was not for this case, and it ended before Attorney Seay cross-examined Boston in [Appellant's] first trial." PCRA Opinion, 2/14/11, at 125. The court went on to note that Attorney Seay conducted an extensive cross-examination, as suggested by the Commonwealth, and that the cross-examination "insinuates that Boston killed Lisby because Lisby owed him money for drugs." Id. at 126. The court emphasized that Appellant failed to allege any basis on which the purported conflict of interest resulted in a lack of fair representation.

As our Court recently explained, a petitioner "cannot prevail on a conflict of interest claim absent a showing of actual prejudice." Commonwealth v. Weiss, 2013 Pa. LEXIS 2617; 2013 WL 5848710 (Pa. filed Oct. 31, 2013); see also Commonwealth v. Hawkins, 787 A.2d 292, 297 (Pa. 2001) (offering that petitioner must demonstrate that counsel's prior representation of Commonwealth witness adversely affected counsel's representation of petitioner under PCRA). We further explained that, although prejudice is presumed when there exists an actual conflict of interest, this presumption is only applicable when counsel actively represented conflicting interests. Weiss, at *62 n.16, *19 n.16. Where counsel does not actively represent conflicting interests, a claim based upon the appearance of a conflict of interest lacks merit. Id.

Appellant's claim is without merit, as it has no basis in fact or law. First, Appellant fails to refute the PCRA court's factual determination that Attorney Seay did not represent Appellant and Boston at the same time. While Attorney Seay represented Boston in the preliminary stages of an assault case, this was prior to Boston's testimony at Appellant's first trial. Furthermore, Boston testified that, at the first trial, he was represented by Michael Wallace, Esquire. At Appellant's second trial, Boston was represented by Nino Tinari, Esquire. Second, as argued by the Commonwealth, and found by the PCRA court, a review of the record reveals that Attorney Seay aggressively and extensively cross-examined Boston, eliciting from Boston that Boston hoped for sentencing consideration in his own criminal case, that he lied to police, that he did not see Appellant with a gun, that Appellant had no motive to shoot the victim, and that he recanted statements he made to police regarding Appellant shooting the victim. Moreover, Attorney Seay repeatedly accused Boston of being the actual killer. Thus, Appellant failed to demonstrate how Attorney Seay's prior representation of Boston in any way adversely impacted trial counsel's representation of him, let alone constituted actual prejudice. Commonwealth v. Karenbauer, 715 A.2d 1086, 1094 (Pa. 1998). Based upon the above, the PCRA court's findings are supported by the record and free from legal error, and Appellant is not entitled to relief.

### C. Impeachment of Dozier with Dismissal of Charges

Appellant contends that, at the time Michael Dozier initially spoke with police and implicated Appellant, he had one open burglary case and one open aggravated assault case. Subsequently, both cases were dismissed. Further, Appellant claims that, after Dozier agreed to testify as a Commonwealth witness, but before testifying at trial, Dozier was arrested and charged in four separate cases, including two burglary cases, one criminal mischief case, and one theft and conspiracy case. According to Appellant,

all of these cases were dismissed when Dozier was cooperating with the Commonwealth and before he testified at trial. Appellant argues that trial counsel was ineffective for failing to bring the dismissals of these six charges against Dozier to the attention of the jury. Appellant asserts that this information should have been used for impeachment purposes, trial counsel had no reason to fail to introduce this evidence, and, as the Commonwealth's case depended largely upon two witnesses, Dozier and Boston, he was prejudiced by trial counsel's deficient performance. Moreover, in cursory fashion, Appellant asserts that, to the extent appellate counsel failed to raise this issue on appeal, he was ineffective for failing to do so.

The Commonwealth responds that, because there were no open charges when Dozier testified, trial counsel was not ineffective for failing to impeach Dozier. According to the Commonwealth, Appellant's trial counsel could not be deemed to be ineffective for not presenting evidence of alleged bias as the charges had been dismissed at time of trial, citing Commonwealth v. Hill, 566 A.2d 252, 253 (Pa. 1989) (explaining jury must be advised of bias when there are "outstanding criminal charges or because of any non-final criminal disposition against" the witness). Further, the Commonwealth offers that trial counsel did impeach Dozier with evidence that he was on house arrest on a pending contempt charge, Dozier's entire criminal record was introduced into evidence, and Dozier had testified that he had not been promised anything as to any open charge. Further, trial counsel cross-examined Dozier regarding *crimen falsi* convictions, and established that he: was a crack addict who had been drinking heavily at the time of the shooting, previously testified that he did not see Appellant shoot the victim, told a defense investigator that he did not see Appellant shoot the victim, and only told police this because they threatened to arrest him. Thus, according to the Commonwealth, even if there were open cases against Dozier, Appellant was not prejudiced by

counsel's failure to impeach Dozier with that evidence. <u>Commonwealth v. Dennis</u>, 715 A.2d 404, 408-09 (Pa. 1998) (finding counsel not ineffective for failing to impeach witness regarding open cases as witness impeached in other ways).

The PCRA court first pointed out that there were no open pending criminal matters against Dozier when he testified, and he was questioned about past charges for which he pled guilty or was found guilty. The PCRA court found that Appellant failed to develop whether the municipal court cases that were dismissed were the same matters about which Dozier testified. Moreover, the PCRA court noted that Appellant failed to provide the court with any details regarding whether these matters had relevance with respect to the witness's credibility or bias. The PCRA court continued that Dozier's testimony was both cumulative and corroborated. Thus, not only did Appellant fail to explain how these charges would have been relevant or provided probative information, the failure by counsel to explore these alleged open cases would not have affected the outcome of the trial.

Initially, Appellant does not refute the PCRA court's assertion that this claim was not developed below, and, thus, for this reason alone, relief should be denied. Further, the PCRA court found, as a factual matter, that the charges that serve as the basis of Appellant's claim were not open when Appellant testified. Thus, Appellant's claim lacks a factual predicate. Yet, even assuming, *arguendo*, there were open cases that were dismissed shortly before Dozier testified, or at the time he testified, Dozier's testimony was cumulative of, and corroborated, Boston's testimony. Importantly, as noted above by the Commonwealth, Dozier was thoroughly cross-examined by trial counsel regarding his less than pristine background and his motives for testifying against Appellant. Appellant has simply failed to establish how he was prejudiced. <u>Dennis</u>, <u>supra</u>.

### D. Impeachment of Dozier with Evidence of Favorable Treatment

Appellant argues that, at the time of his trial, the Philadelphia District Attorney's office had a "policy and practice of providing significant Commonwealth witnesses in homicide prosecutions free housing and cash stipends, especially where the witness is perceived as unreliable, either because reluctant to testify or a drug addict (both of which applied to Morris Dozier)." Brief of Appellant at 18. Appellant believed Dozier received such benefits and sought discovery, *inter alia*, of any documents relating to such benefits. At a hearing on the motion for discovery, the Commonwealth asserted that it had reviewed the files in the matter and had found no responsive documents. Appellant evidently requested criminal files of the witnesses, but the PCRA court denied this request. According to Appellant, due to the denial of discovery, he could not substantiate his allegations. Related to this argument, Appellant continues that, the withholding of evidence of the provision of money or benefits to a witness would violate Brady, supra. Appellant asserts that, because "the evidence of the benefits provided to Dozier has never been disclosed by the Commonwealth," even though a Brady claim was not raised prior to the PCRA proceedings, it has not been waived. Thus, to the extent prior counsel failed to discover and raise this claim at trial or on appeal, Appellant argues he rendered ineffective assistance of counsel. Finally, Appellant notes that the PCRA court rejected this claim as lacking in a factual basis, but submits that it "begs the question whether Appellant was entitled to the requested discovery." Brief of Appellant at 20.

The Commonwealth retorts that Appellant's claims that Dozier received cash and hotel accommodations, that Appellant was improperly denied discovery, and that this violated Brady, are all without factual support. Accordingly, the Commonwealth contends that Appellant's speculative accusations were inadequate to demonstrate

ineffectiveness. As noted by the Commonwealth, the PCRA court rejected this claim as being "completely without any factual basis whatsoever and is patently frivolous." PCRA Opinion, 2/14/11, at 165.

Appellant is clearly not entitled to relief. Appellant, in his PCRA petitions, as amended, only "believes and alleges" that Dozier received considerations. This is insufficient to permit discovery, or to form the basis for a Brady claim. See Commonwealth v. Brown, 872 A.2d 1139, 1157-58 (Pa. 2005) (request for information based upon accommodations made for other witnesses in other cases "falls woefully short of establishing entitlement to relief") Id. at 1158; Commonwealth v. Lark, 746 A.2d 585, 591 (Pa. 2000) (alleged discovery violations in other cases where prosecution made payments to witnesses "insufficient to demonstrate that any such violations existed in this case"). Indeed, as he fails to provide even a minimal basis for his claim, Appellant is asking for nothing more than a fishing expedition. Id. at 591.

### E. Benefits of Terrance Lisby Deal with Commonwealth

Appellant offers that, as part of the Commonwealth's case, a plea agreement was entered into between the Commonwealth and Terrance Lisby, the victim's uncle. In exchange for his testimony against Appellant in this case, and against a co-defendant in his own homicide case, Lisby was permitted to plead guilty to third-degree murder in his own case and request that he be sentenced to at least five years imprisonment. According to Appellant, trial counsel attempted to establish the full benefits of that deal by introducing evidence that, if convicted of first degree murder, Lisby faced a sentence of life imprisonment without the possibility of parole, and that the allegations against Lisby supported the charge of first-degree murder. During counsel's cross-examination of Lisby, he attempted to elicit that Lisby faced a sentence of life "without parole." The Commonwealth objected, and the trial court stated to counsel for him to just refer to "life

imprisonment," so that the issue of commutation would not have to be explained. Appellant claims that the full terms of the plea agreement were important and that the greater consequences faced by a witness if he or she did not accept the plea agreement resulted in a greater motive to lie to secure the benefits of such a deal. Here, Appellant maintains, the jury heard only that Lisby would be facing "life imprisonment," and that juries have misleading impressions of that term. According to Appellant, most juries lack accurate information about the meaning of life imprisonment, and believe such prisoners will actually be released after a term of years, citing Simmons v. South Carolina, 512 U.S. 154 (1994) (plurality). Finally, Appellant, in cursory fashion, also claims that trial counsel was prevented from developing information about the underlying facts of Lisby's homicide case, and that such facts would have demonstrated how beneficial a deal Lisby had received.

The Commonwealth responds that, when trial counsel sought to emphasize that life imprisonment meant life without parole, the prosecutor objected on the basis that life without parole is not necessarily the case in some circumstances, and the trial court offered, "[c]ommutation, let's not get into that," N.T. 1/2/1991, at 2.202-03, a rationale, according to the Commonwealth, that trial counsel did not pursue further. The Commonwealth maintains that the jury knew Lisby avoided a life sentence by pleading guilty to third-degree murder, the plea agreement was read to the jury, Lisby testified to his understanding of the requirements under the agreement, and Lisby was obligated to testify against his co-defendant in his trial, and against Appellant. Finally, the Commonwealth offers that the jury was informed that, if Lisby did not meet his duties under the plea agreement, the agreement would be withdrawn, and he would face first-degree murder charges and life imprisonment. According to the Commonwealth, the jury was informed of the full extent of the "sweetheart deal," including the sentence

Lisby faced absent the deal. Further, the Commonwealth offers that Appellant fails to establish counsel lacked a reasonable basis for not further pressing the issue, as the jury was informed that Lisby avoided life imprisonment and was aware of the substantial benefit he gained by agreeing to cooperate.

The PCRA court determined that it did not prevent the jury from hearing that Lisby was permitted to plead to third-degree murder to avoid a possible conviction for first-degree murder, that, if convicted, Appellant would have been sentenced to life without parole, and that he could be released only if the Governor granted him a pardon. According to the PCRA court, when the prosecutor objected to the term "without parole" and "pardon," it did not rule on the objection and did not instruct the jury to disregard those statements. Thus, the PCRA court reasoned that the jury was permitted to consider the information.

At trial, Appellant's counsel asked whether Lisby knew "there was no parole for life imprisonment, the Governor could only pardon; am I right?" N.T., 1/2/91, at 2.202. The Commonwealth objected, and the trial court responded by offering "Commutation, let's not get into that." Id. at 2.202-03. Trial counsel continued, "That was part of what you were offered; am I right?" Id. at 2.203. Lisby responded, "If that's what you say, sir." Id. Thus, while somewhat unclear, whether the Commonwealth's objection to trial counsel's statement regarding life without parole was sustained, it appears the import of the concept of life without parole except for commutation by the Governor was conveyed to the jury. Furthermore, it appears that trial counsel thoroughly addressed all aspects of Lisby's plea agreement. Moreover, in closing, trial counsel, without objection, noted that the only relief from life imprisonment was commutation by the Governor, albeit in reference to Appellant. N.T., 1/10/91, at 8.76. Thus, Appellant's contention is without merit.

Even if Appellant's claim had arguable merit, he cannot demonstrate prejudice. Specifically, it appears that the jury had more than enough evidence to discredit Lisby based upon the agreement itself, as well as testimony that Lisby was a murderer and a drug dealer, that he and Boston confronted the victim about stolen drugs, that he lied to police, lied under oath, testified inconsistently, and had a motive to kill the victim. Further, Lisby was not an eyewitness, but explained Boston's role as Lisby's drug supplier, that the victim had stolen the drugs, and that Appellant was tied to the JBM. Thus, Lisby's testimony was harmful to Appellant, but cumulative and inferior to other incriminating evidence. Therefore, even if the jury had been informed that a life sentence means life without parole, and it had rejected Lisby's testimony as driven by a plea deal, there was still significant evidence against Appellant. We find that Appellant is not entitled to relief. Finally, regarding Appellant's cursory claim that trial counsel was prevented from developing information about the underlying facts of Lisby's homicide case, Appellant offers no authority or meaningful argument in support thereof. Thus, this claim is waived for Appellant's failure to develop the issue, Pa.R.A.P. 302, and, in any event, fails for the same reasons set forth above.

## F. Failure to Object to References to Terrance Lisby Deal to Testify Truthfully

As explained above, as part of the Commonwealth's case, a plea agreement was entered into between the Commonwealth and Terrance Lisby, the victim's uncle. To explain the terms of the agreement, the Commonwealth called Assistant District Attorney Joseph Labar who testified, *inter alia*, that the agreement required Lisby to "testify truthfully," and that if, in the judgment of the Commonwealth, he violated that condition, the Commonwealth would revoke the agreement. Appellant submits that this testimony unfairly bolstered Lisby's credibility over every other witness who is obligated to testify truthfully. Moreover, Appellant claims that this evidence went further and

implied that the Commonwealth believed that Lisby was telling the truth. This, according to Appellant, constituted improper vouching by the Commonwealth. Appellant offers that trial counsel had no reason to fail to object — Lisby was an important Commonwealth witness, and offered Appellant's motive to kill the victim — and this prejudiced Appellant in light of the weakness of the Commonwealth's case.

The Commonwealth responds that the prosecutor offered no personal assurances as to the veracity of Lisby's testimony or suggested that, for reasons not disclosed at trial, his testimony was truthful. Instead, the Commonwealth offers that the prosecutor merely presented the terms and conditions of the agreement, as he was mandated to do. That the agreement required truthfulness was not an endorsement of Lisby's testimony. Moreover, the Commonwealth claims that trial counsel had good reason not to object, as the plea agreement was the focal point of his attack of Lisby's credibility. The PCRA court rejected this claim, finding that, while a prosecutor is not permitted to express a personal belief as to a witness's credibility, the circumstances here did not suggest that the Commonwealth gave an opinion regarding the veracity of Lisby.

Generally, a prosecutor commits improper bolstering when it places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony. Commonwealth v. Williams, 896 A.2d 523, 541 (Pa. 2006). As noted by the Commonwealth, the prosecutor here did not personally assure the veracity of Lisby's testimony. Neither did the prosecution indicate there was information outside of the trial that supported Lisby's testimony. Rather, the prosecution was required to fully disclose any offers of leniency, and the failure to do so could have resulted in a new trial. Commonwealth v. Hallowell, 383 A.2d 909, 911 (Pa. 1978).

Furthermore, the mere reference that a plea agreement requires truthfulness does not constitute improper vouching. Commonwealth v. Miller, 819 A.2d 504, 515 (Pa. 2002) (prosecutor's use of word "truthful" in direct examination of witness was permissible articulation of parameters of plea agreement). Thus, we find no merit to Appellant's claim and the PCRA court's determination is supported by the record and free of legal error.

### G. Failure to Request a Kloiber Instruction

Appellant contends that trial counsel was ineffective for failing to request a Kloiber instruction with respect to witnesses Dozier and Boston. Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954). A Kloiber charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past. Commonwealth v. Rollins, 738 A.2d 435, 448 n.14 (Pa. 1999); Commonwealth v. Gibson, 688 A.2d 1152, 1163 (Pa. 1997). However, "[w]hen the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a Kloiber instruction." Commonwealth v. Ali, 10 A.3d 282, 303 (Pa. 2010) (citations omitted).

Appellant focuses upon Dozier failing to identify him when police showed him a photograph of Appellant and the fact that he gave a statement to Appellant's defense team that Appellant was not the shooter. Additionally, Appellant stresses that Dozier's description of the shooter's clothing was in conflict with another eyewitness's description of Appellant's clothing at the time of the murder. Similarly, Appellant points to Boston's statement to Appellant's defense team that Appellant was not the shooter, and that Boston did not identify Appellant as the shooter in his first statement to the police. The

Commonwealth emphasizes that both Dozier and Boston were able to identify Appellant, an individual they both knew well and observed from a close distance during the murder. Yet, the Commonwealth explains that it was threats by the JBM that led to both men's initial refusal to identify Appellant as the murderer, and, thus, because the ability to identify was not at issue, Kloiber is not implicated.

The PCRA court, in rejecting Appellant's argument that trial counsel was ineffective for failing to request a Kloiber charge, determined that both Dozier and Boston were in a clear position to observe Appellant, but failed to initially identify him as the assailant out of fear of reprisal by the JBM. The PCRA court went on to find that, even if a Kloiber charge was warranted, in instructing the jury, the trial court explained how to judge the testimony of a witness in general, and specifically for those who may have given inconsistent statements, and, thus, Appellant failed to establish prejudice.

Initially, we note that Appellant fails to demonstrate that either Dozier or Boston did not have an ability or opportunity to clearly view him at the time of the murder. Dozier observed Appellant from less than 10 yards away, and knew him for years. Moreover, Dozier signed a statement identifying Appellant and unequivocally identified him at a preliminary hearing, and again later at trial. Similarly, Boston knew Appellant and was standing next to him on a street corner when Appellant pulled his weapon and murdered the victim, and, thus, could clearly view Appellant. Further, at Appellant's first trial in this matter, Boston unequivocally identified Appellant as the shooter. While at the second trial, Boston invoked his Fifth Amendment privilege against self-incrimination, and refused to testify, his prior testimony was read to the jury. Thus, both men had the clear ability to identify Appellant as the shooter, and neither Dozier nor Boston equivocated in their identification of Appellant at trial.

As noted above, however, Dozier and Boston initially did not identify Appellant as the shooter to police. Both gave Appellant's defense team statements that Appellant was not the shooter. Both men, however, offered uncontradicted testimony at trial that these statements exculpating Appellant were fueled by their fear of reprisals from the JBM, who had threatened them on numerous occasions.

Our case law makes clear that the need for a Kloiber charge focuses on the *ability* of a witness to identify the defendant. Our Commonwealth's decisional law has long held that prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant. See Commonwealth v. Fisher, 813 A.2d 761, 770-71 (Pa. 2002) (opinion announcing the judgment of the court) (providing no relief to PCRA petitioner based on conclusions Kloiber instruction litigated on direct appeal where witnesses, who knew defendant prior to shooting, failed to identify defendant at pre-trial line-up due to fear that identifying him would endanger her and her family); Commonwealth v. Lee, 585 A.2d 1084, 1087 (Pa. Super. 1991) (finding Kloiber instruction inappropriate where fear of identifying defendant cannot be equated to failure to make identification); Commonwealth v. Smith, 495 A.2d 543, 548-49 (Pa. Super. 1985) (opining that absence of Kloiber instruction did not require reversal of judgment of sentence where rape victim's initial statement to police that she did not see her attacker's face, but later identification of him at preliminary hearing and trial, was due to witness being scared); cf. Ali, 10 A.3d at 304 ("Any perceived weaknesses in N.M's testimony attributable to her tender years, the circumstances of the horrific experience, the subject matter, and her ability to recall details were matters of credibility for the jury as factfinder to decide; but those issues did not undermine N.M's actual physical ability to identify appellant at the time and place of the murder, so as to trigger the special identification testimony concerns underlying the Kloiber line of decisions.")

Here, both Dozier and Boston had the plain ability to identify Appellant. Moreover, both men had known Appellant for numerous years. Thus, their ability to observe Appellant as the shooter was not at issue, and any claim of ineffectiveness for a failure to seek such a charge is weakened substantially by Dozier and Boston having known Appellant for years before the murder. While, prior to trial, Dozier and Boston did not identify Appellant as the shooter, a point which was made clear at trial and subjected to thorough cross examination, as concluded by the PCRA court, this was because they were both in fear that the JBM would harm them or their families. Thus, based upon the circumstances of their observations of Appellant, their having previously known Appellant for years, and their explanation of why they did not initially identify Appellant as the shooter, neither Dozier's nor Boston's *ability* to identify Appellant was at issue. As such, these circumstances do not implicate Kloiber.

We acknowledge, however, that in making this determination, the PCRA Court accepted that Dozier's and Boston's early refusal to identify Appellant as the murderer was due to their fear of harm at the hands of the JBM. In doing so, the court embraced their explanation without itself holding an express credibility reassessment hearing on this issue. Such determinations are generally for the trial court, or the PCRA court after hearing, and, thus, one approach would be to remand the matter to the PCRA court, to hold a hearing, in which these same witnesses would be located, called to again testify, presumably cross-examined, just as was the case at Appellant's trial, and the PCRA court could conduct an express credibility reassessment, reconsidering its prior determination that the men failed to initially identify Appellant out of fear due to threats by the JBM.

In these particular circumstances, however, we are satisfied that a remand is unnecessary. The undisputed testimony of record discloses that Dozier and Boston

knew Appellant prior to the murder, were in clear view of the shooting, and initially feared reprisals against them by the JBM if they testified against Appellant. All of this testimony was subject to thorough cross examination. Further, the jury convicted Appellant of murder of the first degree, a conclusion it came to by apparently crediting the witnesses' assertions that Appellant was the shooter. Finally, our prior case law suggests that appellate courts may, in limited circumstances, resolve matters without an express credibility determination hearing, where credibility (in light of implausibility) seems facially apparent and on conclusions drawn from an existing record. See Commonwealth v. Small, 980 A.2d 549, 559-61 (Pa. 2009); Commonwealth v. Gibson, 951 A.2d 1110, 1139 n.20 (Pa. 2008); Commonwealth v. Bryant, 855 A.2d 726, 748 (Pa. 2004). Finally, we note that appellate review of ineffectiveness matters is, ultimately, *de novo*. Commonwealth v. Rios, 920 A.2d 790, 810 (Pa. 2007). Thus, in these limited circumstances, we are satisfied that a remand for an express credibility determination by the PCRA court in this matter is not necessary. Accordingly, Appellant's claim concerning the absence of a Kloiber instruction fails.

## H. Failure of Cautionary Instructions for Bad Acts

Appellant argues that the Commonwealth was permitted to introduce evidence of other crimes without limiting instruction and that prior appellate counsel was ineffective for failing to raise this issue on appeal. Appellant offers that the other crimes evidence was that Appellant was a member of the JBM, "a gang that sold drugs and engaged in unlawful violence to protect its business and silence or intimidate rivals and potential witnesses." Brief of Appellant at 33. Appellant acknowledges that the evidence was admissible for explaining why certain witnesses gave inconsistent statements, failed to come forward, and were bribed to not testify, all due to fear of reprisal by the JBM. Further, Appellant suggests that this evidence was admissible for establishing that

Appellant was a central player in the elimination of rival drug dealers by the JBM, and as a motive for the murder. Appellant claims that, under Pennsylvania law, evidence of a distinct crime is inadmissible against a defendant who is being tried for a different crime due to the prejudicial effect of the admission of that evidence, citing Commonwealth v. Claypool, 495 A.2d 176, 178 (Pa. 1985). According to Appellant, other crimes evidence, however, must be accompanied with a cautionary instruction which fully and carefully explains to the jury the limited purpose for which the evidence has been admitted. Id. at 180. Appellant further presses, in cursory manner, that the failure to give a limiting instruction also violates due process as it undermines the fairness of the proceedings, and violates the Eighth Amendment to the United States Constitution, as Appellant submits it deprived him of a fair and reliable capital sentencing. Finally, according to Appellant, the Commonwealth is limited at the penalty phase to evidence that supports an aggravating circumstance, and, here, such evidence constitutes a non-statutory aggravator which, according to Appellant, was improperly permitted to be considered by the jury. Appellant asserts that there was simply no reason for counsel to fail to ask for such a cautionary instruction, or for counsel to fail to raise this issue on appeal, and that he suffered prejudice as a result.

The Commonwealth first claims that this issue was considered by our Court on direct appeal and found to be meritless. Reid, 642 A.2d at 461 & n.10. Thus, the Commonwealth submits that, since this claim was already litigated and rejected, it is unreviewable as being finally litigated. Further, the Commonwealth offers that the evidence was relevant for more than the reasons offered by Appellant, and that his JBM membership and drug dealing and intimidation of witnesses was relevant and admissible to demonstrate motive and conspiracy — to show "that Appellant was a JBM enforcer who killed the victim because he had stolen illegal JBM drugs." Reid, 642 A.2d

at 461. Similarly, the PCRA court found the question of the admission of such bad acts to have been addressed on direct appeal, and determined that not only did Appellant fail to suggest an appropriate cautionary instruction for such admissible evidence, but that it did not contain evidence of a prior crime, but only inferred such.

Initially, we observe this claim has not been previously litigated. Appellant raises his claim as one of appellate counsel ineffectiveness, for failure to request a cautionary instruction, and, thus, the specific issue before us has not been previously addressed. Commonwealth v. Collins, 888 A.2d 564 (Pa. 2005) (claim of ineffective assistance of counsel distinct from underlying claim of trial court error). The underlying question of the admissibility of evidence concerning Appellant's association with the JBM, however, was addressed in our opinion on direct appeal. Our Court determined such information was admissible to establish motive and conspiracy, including the inference that Appellant was a JBM enforcer who killed the victim because he had stolen JBM drugs.

Evidence of prior bad acts is generally inadmissible to prove character or to show conduct in conformity with that character. Pa.R.E. 404(a)(1). Such evidence is, however, admissible when offered to prove other relevant facts, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or *res geste* to give context to events surrounding a crime. See Weiss, supra. While evidence of prior bad acts may be relevant and admissible, due to the potential for misunderstanding, cautionary instructions are sometimes required. Claypool, 495 A.2d at 179.

The PCRA court opined that, because the evidence of Appellant's association with the JBM was relevant to establish motive, it did not require a cautionary instruction. As offered by the Commonwealth, Appellant did not murder the victim "spontaneously; he did so because he was a JBM enforcer with 'a job to do.'" Brief of Commonwealth at

32. The evidence that Appellant now asserts required a limiting instruction — his membership in the JBM — was directly relevant to demonstrate motive and conspiracy in this appeal. Our Court noted on direct appeal that, while this information was directly applicable to the charges against Appellant, it only implied prior criminal activity, and did not refer to an actual previous crime or similar specific act. Reid, 642 A.2d at 461. Thus, as found by the PCRA court, because Appellant's association with the JBM, and not any specific acts he committed in that association, was directly probative, it did not require any instruction. Even assuming *arguendo* there is merit to Appellant's claim that trial counsel failed to request cautionary instructions, we find that in light of the mere implication of criminal activity due to Appellant's association with the JBM, and the other evidence against Appellant as having murdered the victim, he has failed to establish prejudice. Moreover, Appellant's suggestion that the incorporation of the guilt phase evidence into the penalty phase resulted in the same error, resulted in impermissible consideration of non-aggravating factors, and required a cautionary instruction, fails for the same reason and also because the trial court instructed the jury that "only" Appellant's significant history of felony convictions involving the use of threat or violence can constitute an aggravating circumstance, and only if proven. N.T., 1/10/91, at 8.88. Thus, we find that PCRA court's determination is supported by the record and free of legal error.

## I. Jury Instructions Regarding Criminal Records

Appellant maintains that the trial court restricted the jury's consideration of impeachment evidence regarding each important Commonwealth witness, and that trial counsel failed to object to this alleged error. Specifically, with respect to Dozier, Appellant claims that he was arrested in Philadelphia County for two counts of theft and receiving stolen property and unauthorized use of a vehicle. According to Appellant, the

trial court erroneously charged the jury that only arrests leading to *crimen falsi* convictions could be used to challenge credibility. Appellant argues pending criminal cases within the same jurisdiction are always admissible to show the witness's bias and motive to fabricate, citing Davis v. Alaska, 415 U.S. 308, 318 (1974). Appellant offers the same claim with respect to Boston, whom Appellant asserts had pending aggravated assault charges when he testified against Appellant. While the trial court admitted the evidence of the pending charges, according to Appellant, it failed to properly instruct the jury regarding how to consider such evidence, based on the jury's belief that only *crimen falsi* convictions could be used to impeach. Appellant asserts that it was never contended that the "trial court's instructions on *crimen falsi* impeachment was in error, but rather that the trial court erred in failing to instruct the jury on how it should consider evidence of the witnesses' pending charges." Brief of Appellant at 39.

Additionally, Appellant offers that Terrance Lisby pled guilty to third-degree murder, and that the Commonwealth dropped first-degree murder charges against him, in exchange for Lisby's testimony in both Appellant's case and Lisby's own murder case. Part of that agreement was that the Commonwealth would make no recommendation regarding Lisby's sentence, and, according to Appellant, the Commonwealth emphasized the open nature of that agreement. Appellant argues that the trial court improperly instructed the jury that evidence of Lisby's third-degree murder conviction was admitted solely to inform the jury that an agreement had been reached with the Commonwealth, yet, Appellant maintains it was equally admissible relative to Lisby's "subjective expectation of leniency and favorable treatment, regardless of the existence or terms of an actual deal." Brief of Appellant at 40. Thus, according to

Appellant, it was an expectation of leniency, and not just the agreement itself, that the jury should have been able to consider and was prevented from doing so.

Moreover, Appellant points out that Kevin Brown had pending robbery and related charges against him when he testified at Appellant's trial. According to Appellant, the trial court improperly limited the jury's consideration of these charges to whether any agreement existed, and failed to explain that Brown could have a subjective expectation of favorable treatment regarding the disposition of these charges. Also, Appellant claims that the trial court erred further by reminding the jury that Brown denied that a deal existed. Finally, Appellant contends the trial court erred by instructing the jury that only arrests leading to *crimen falsi* convictions could be used for impeachment, and failed to explain to the jury that robbery was a *crimen falsi* offense with which Brown could be impeached.

The Commonwealth initially responds that trial counsel did request the specific instruction as to evidence of "a witness who has self interest or . . . benefit received," N.T., 1/8/91, 6.180-81, both before and after the jury charge. Thus, the Commonwealth contends, for this reason alone, Appellant's ineffectiveness claim is without merit. Moreover, the Commonwealth claims the trial court properly stated the current law that witness credibility may be impeached regarding an arrest, only if such arrest resulted in a conviction for *crimen falsi*. Commonwealth v. Burton, 417 A.2d 611, 613 (Pa. 1980); Suggested Standard Jury Instruction 4.08D (Crim). Further, the Commonwealth offers that the trial court instructed the jury it should consider whether a witness had an agreement with the Commonwealth in exchange for testifying, and whether there existed an interest or motive that could have impacted the witness's testimony. More generally, the Commonwealth points to the instruction for the jury to take "all of the surrounding circumstances and determine which witnesses you will believe and what

weight you will give their testimony." N.T., 1/8/91, 6.148. The Commonwealth also points to our decision on direct appeal, wherein we noted that the trial court instructed the jury concerning its duty to make credibility determinations and that it "clearly explained that any interest or motive of a witness that may color his recollection and testimony could be considered in making such determinations." Reid, 642 A.2d at 462. Thus, according to the Commonwealth, even if Appellant failed to request a bias instruction, he would not be entitled to relief.

The PCRA court first observed that the trial court's instruction regarding the limitation of consideration to *crimen falsi* convictions is a correct statement of the law, citing Commonwealth v. Ross, 252 A.2d 661 (Pa. 1969). While acknowledging an exception to establish bias, such as challenging a witness's self-interest by questions regarding possible or actual favored treatment in a non-final matter involving the same prosecuting authority, citing, Commonwealth v. Evan, 512 A.2d 626 (Pa. 1986), the PCRA court went on to opine that the trial court's instructions, when viewed as a whole, embraced those requirements for the admission and consideration of the witness's other crimes. The trial court first gave a general *crimen falsi* instruction, then charged:

> There is evidence that Terrance Lisby pled guilty to third degree murder. I had allowed this evidence in for the sole purpose of informing you if any agreement exists between him and the Commonwealth for his testimony in this case. Terrance Lisby to my recollection would have the Assistant District Attorney advise the judge as to his cooperation in this case. Sentence would depend solely on the discretion of the Judge beyond any mandatory sentence of five years which is compelled by law.
>
> There is also evidence that the witness Morris Dozier was convicted of burglary, theft, and unauthorized use of an automobile, which are crimes [of] *crimen falsi*. The only purpose for which you may consider this evidence of prior convictions is in deciding whether or not to believe all or part

of Morris Dozier's testimony. In doing so you may consider the type of crime committed, how long ago it was committed, and how it may affect the likelihood that Morris Dozier has testified truthfully in this case.

Kevin Brown has an outstanding charge of robbery, for which he is presumed innocent. I had allowed this evidence in for the sole purpose of informing you if any agreement exists between him and the Commonwealth for his testimony in this case. It is my recollection that Kevin Brown has denied any deal of any kind.

N.T., 1/8/91, 6.155-6. According to the PCRA court, the charge made clear that, while a judge would have the ultimate decision whether to accept a plea agreement, credibility of the witness would depend upon his expectation and not whether an actual agreement had been consummated. The trial court further instructed the jury with respect to Lawrence Boston:

Some special rules may apply to your consideration of Lawrence Boston's testimony concerning the defendant's commission of the crime charged in this case. First, you must decide whether or not Lawrence Boston himself joined with someone in committing the crime with which the Defendant is charged. Although Lawrence Boston did not admit his involvement, other evidence could support a contrary conclusion. So after considering all the evidence you have heard you must first decide whether or not Lawrence Boston himself participated as an accomplice in the commission of the crime. [If the jury concludes Boston participated in the crime, certain principles apply to his testimony].

* * *

First, the testimony of Lawrence Boston as an accomplice should be looked upon with disfavor because it comes from a corrupt and polluted source. Second, you should examine Lawrence Boston's testimony closely and accept it only with caution and care. Third, you should consider whether Lawrence Boston's testimony that the Defendant committed

the crime is supported in whole or in part by evidence other than his testimony, for if it is supported by independent evidence it is more dependable. Fourth, you may find the Defendant guilty based on Lawrence Boston's testimony alone and even though it is not supported by any independent evidence. And so to summarize, even though you decide Lawrence Boston is an accomplice, his testimony standing alone is sufficient evidence on which to find the Defendant guilty if after following the foregoing principles you are convinced beyond a reasonable doubt that Lawrence Boston testified truthfully that the Defendant committed the crime.

Id. at 6.157-60. According to the PCRA court, these charges, when read as a whole, covered all aspects of the requirements of admission and consideration of the witnesses' other crimes. Further, the PCRA court refuted Appellant's factual assertion that, with respect to Morris Dozier, there were open charges against him regarding receiving stolen property, theft, and unauthorized use of an automobile, determining that the record did not support such assertions and that, because there were no outstanding charges, it was proper to limit the jury's consideration of his record to crimes of *crimen falsi*. Finally, the PCRA court noted that, in Appellant's direct appeal, our Court suggested, regarding whether the trial court erred in failing to give a corrupt source charge or accomplice liability instruction, that the trial court, with respect to making credibility determinations, "clearly explained that any interest or motive of a witness that may color his recollection and testimony could be considered in making such determinations." Reid, 642 A.2d at 462.

Based upon the above, we find that the trial court properly stated the current law that witness credibility may be impeached regarding an arrest, only if such arrest resulted in a conviction for *crimen falsi*. Burton, 417 A.2d at 613. Further, as offered by the PCRA court, we note that the trial court instructed the jury it should consider whether a witness had an agreement with the Commonwealth in exchange for testifying,

and whether there existed an interest or motive that could have impacted the witness's testimony. N.T., 1/8/91, at 6.155-6, 6.157-60. More generally, and as noted by the Commonwealth, the jury was instructed it was to consider "all of the surrounding circumstances and determine which witnesses you will believe and what weight you will give their testimony." Id. at 6.148. Additionally, the trial court instructed the jury that, in considering witnesses' testimony, "some have an interest or motive which may have colored their recollection and testimony. And all such personal equations must enter into your determination as to how much reliance you can place on the testimony of each witness." Id. at 6.149. Related thereto, as noted by the Commonwealth and the PCRA court below, our Court on direct appeal noted that the trial court instructed the jury concerning its duty to make credibility determinations and that it "clearly explained that any interest or motive of a witness that may color his recollection and testimony could be considered in making such determinations." Reid, 642 A.2d at 462. Thus, we conclude, when the instructions to the jury are considered as a whole, Appellant failed to establish that he is entitled to relief. In any event, even if Appellant failed to request a specific bias instruction, in light of the instructions taken as a whole, he did not suffer prejudice which would entitle him to relief.

### J. Failure to Instruct Jury that Presence at Scene is Insufficient to Convict

Appellant maintains that trial counsel was improperly denied an instruction on mere presence, including that Appellant could not be convicted if he was merely present at the scene, even if he fled the scene or exhibited other indicia of consciousness of guilt. The trial court rejected this request, noting the charge on accomplice liability was sufficient. According to Appellant, the lack of an instruction on mere presence enabled the jury to convict Appellant based upon "its collective conclusion that he was present

and then acted to conceal that limited involvement." Brief of Appellant at 44. Appellant maintains that his counsel on direct appeal was ineffective for failing to raise this issue.

The Commonwealth counters that the trial court properly instructed the jury as to the elements of the crimes charged, which required more than mere presence. Further, the trial court offered with respect to the accomplice charge that "[a] defendant does not become an accomplice merely by being present at the scene or knowing about a crime." N.T., 1/8/91, at 6.156.

In light of the trial court's charging the jury as to the elements of the crime, which require more than mere presence, and that accomplice liability requires more than merely being "present at the scene or knowing about a crime," we find no trial court error in refusing to give the instruction requested by Appellant. The jury knew that more than mere presence was required to convict Appellant of any of the crimes charged. Thus, we find that Appellant is not entitled to relief.[12]

### K. Prosecutorial Misconduct - Juror Fear of Crime

Appellant next argues that his due process rights were violated as a result of the Commonwealth's alleged improper attacks on his character by describing America's history with gangsterism, the untouchables, and implying Appellant was a "gangster," and referring to him as a "killer." According to Appellant, these comments were intended to inflame the jury and to convince them Appellant was a "bad man who deserves conviction because of his association with the JBM." Brief of Appellant at 45. Appellant claims prior counsel was ineffective for failing to preserve this claim, and,

---

[12] In his brief, Appellant further suggests that the trial court erred in refusing to instruct the jury that evidence of consciousness of guilt by itself is never enough to convict and counsel was ineffective for failing to preserve this issue on appeal. As Appellant plainly fails to develop this claim in any meaningful fashion, it is not reviewable. Commonwealth v. Hutchinson, 25 A.3d 277, 300 (Pa. 2011).

while raising certain prosecutorial comments, counsel had no reasonable basis to fail to raise all allegedly improper comments on appeal. Finally, Appellant claims that, had counsel preserved and raised this claim on direct appeal, there is a likelihood he would be granted relief from his convictions.

The Commonwealth counters that Appellant's claims are unfounded, notes the PCRA court properly denied relief, and that our Court on direct appeal reviewed the "entire argument" by the Commonwealth and concluded there was no misconduct or ineffective assistance of counsel. Reid, 642 A.2d at 460.

A prosecutor is free to present argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. Commonwealth v. Tedford, 960 A.2d 1, 32 (Pa. 2008). Further, reversible error arises from a prosecutor's comments "only where the unavoidable effect is to prejudice the jur[ors], forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." Id. at 33. To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate "that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process." Id. at 29.

After reviewing the prosecutor's closing statement in its entirety, we conclude that none of the comments had the unavoidable effect of prejudicing the jurors, or creating a fixed bias or hostility which would prevent them from rendering a fair verdict based on the evidence. The Commonwealth's reference to "gangster" was in accord with the evidence which indicated Appellant's killing of the victim was part of performing

a "job" for the JBM — the motive for the killing — and, similar thereto, the Commonwealth's reference to Appellant as a "killer" was not impermissible. Commonwealth v. Porter, 569 A.2d 942, 946 (Pa. 1990) (where evidence supported remark, prosecutor's description of defendant as "cold-blooded killer" was permissible); see also Commonwealth v. Jones, 610 A.2d 931, 943 (Pa. 1992) (reference to defendants as "murdering, child-killing, backshooting trio," "slaughterers," and "executioners" was within bounds of vigorous oratory permitted a prosecutor in closing argument).[13]   Accordingly, trial counsel was not ineffective for failing to object to the Commonwealth's closing argument, and Appellant's claim of appellate counsel ineffectiveness also fails.

## L.  Admission of Former Testimony of Lawrence Boston

Boston was declared unavailable to testify because of his exercise of his Fifth Amendment right against self-incrimination at Appellant's second trial, and, as a result, Boston's former testimony from Appellant's first trial was read into the record.  Appellant maintains this was improper.  Specifically, Appellant contends that, once a witness makes a knowing and intelligent waiver of the privilege against self-incrimination in one proceeding, it is waived for future proceedings in the same case, as long as his testimony sought in a later proceeding would not require the disclosure of new information, citing Commonwealth v. Hall, 565 A.2d 144, 150 n.19 (Pa. 1989) and Commonwealth v. McGrogan, 568 A.2d 924 (Pa. 1990).  Appellant argues his trial counsel properly objected at his second trial that Boston was not legally "unavailable"

---

[13]  Additionally, Appellant also argues the Commonwealth engaged in other misconduct by references to Philadelphia's social ills and by blaming groups like the JBM and individuals like Appellant for causing those problems, and by urging the jury not to "let him walk out of here."  Appellant failed to include these assertions in his 1925(b) statement, and, thus, they are not reviewable. Commonwealth v. Castillo, 888 A.2d 775, 779-80 (Pa. 2005).

since Boston had previously waived his Fifth Amendment rights and so compelling his testimony would not require the disclosure of new information. More specifically, Appellant asserts that, while at the first trial Boston acknowledged being at the scene of the murder, his testimony from the first trial was not self-incriminating. According to Appellant, Boston's testimony at Appellant's second trial would not have required the disclosure of any new information that would have placed him in jeopardy. Therefore, Appellant reasons that Boston's waiver of his Fifth Amendment rights at Appellant's first trial precluded him from asserting the privilege at Appellant's second trial. Appellant asserts that counsel, however, failed to preserve this issue on appeal, and, thus, was ineffective. Appellant adds there was no reasonable basis for failing to raise this claim on appeal, and that, due to Boston being a crucial witness for the Commonwealth, and because Appellant was deprived of his right to confront Boston at his second trial, had counsel raised this issue on direct appeal, there was a reasonable likelihood the outcome at trial would have been different.

The Commonwealth offers the general rule that the waiver of a privilege against incriminating one's self in an initial proceeding does not impact the right to invoke the privilege in a subsequent proceeding. Hall, 565 A.2d at 155. Thus, the Commonwealth contends Appellant's statement of the law is simply wrong. Moreover, the Commonwealth maintains that, while Appellant claims that, because Boston had not been charged in this case he did not risk self-incrimination, this was not true. As offered by the Commonwealth, Boston's account of the events of the murder implicated him as a co-conspirator and led to Appellant's conviction for criminal conspiracy. Both Boston and Appellant were at the scene of the murder, both had a motive to kill the victim, and both men went together to confront the victim regarding the theft of drugs that Terrance Lisby was selling for Boston. Further, the Commonwealth highlights that Boston

admitted to selling drugs, lying to police in an initial statement, and implicated himself in an outstanding aggravated assault case. Under these circumstances, the Commonwealth argues, Boston had reason to believe he was in danger of prosecution, and, therefore, his exercise of his right against self-incrimination was proper.

The PCRA court noted the general rule that waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in an independent proceeding, citing Commonwealth v. Rogers, 372 A.2d 771, 779 (Pa. 1977). It acknowledged Appellant's assertion that, once a waiver of the privilege has been made, such waiver applies in a later proceeding as long as the subsequent proceeding would not require the disclosure of new information, and as long as the former testimony did not implicate the witness in any wrongdoing. However, according to the PCRA court, as there was no showing that Boston consulted with his attorney or that he was aware of the privilege, or that he knew the testimony could be used against him, the court reasoned it could not be said that Boston made a valid waiver at Appellant's first trial. The PCRA court continued that Appellant makes no attempt to demonstrate that Boston's testimony was not incriminating or that Appellant was denied a full opportunity to cross examine Boston at Appellant's first trial. The PCRA court concluded Boston's former testimony clearly implicated him in wrongdoing and that the Commonwealth was clear that charges against him were a possibility. Thus, the PCRA court deemed Appellant's claim to be without merit.

As noted by the PCRA court and the Commonwealth, the general rule is that waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in an independent proceeding. Rogers, 372 A.2d at 779. While Appellant contends this ability to invoke the privilege in a later proceeding does not apply when the disclosure of new information is not compelled, citing Hall, 565 A.2d at

151 n.19, our Court in Hall did not embrace this notion, and this specific limitation on the right against self-incrimination has not been adopted as the law of Pennsylvania. Moreover, Appellant's reliance on McGrogan for this novel proposition is clearly inapt, as, in that case, the witnesses' prior testimony was not incriminating. Here, as noted above, Boston's testimony at Appellant's first trial was incriminating with respect to numerous charges, and he remained exposed to charges by the Commonwealth. Thus, the general rule applies and the trial court properly found Boston to have been unavailable. Appellant's claim is without merit.

## M. Batson claim

Appellant argues that the PCRA court erred in denying his motion for relief based on his claim that the prosecution exercised its peremptory strikes on the basis of race and gender in violation of Batson v. Kentucky, 476 U.S. 79 (1986), and, further, that prior counsel was ineffective for failing to raise and litigate this claim. Brief of Appellant at 49. Appellant further contends the PCRA court improperly denied his motion for discovery, his motion for funds to hire an expert, and his motion for an evidentiary hearing, which would have allowed him to further develop his Batson claim.

In Batson, the United States Supreme Court held that a prosecutor's challenge of potential jurors solely on the basis of race violates the Equal Protection Clause. 476 U.S. at 89. In order to demonstrate a Batson violation, an appellant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. Id. at 96. If the appellant succeeds, the burden shifts to the prosecutor to articulate a race-neutral explanation of its peremptory challenges. Id. at 97. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Id. at 98.

Where, as here, a Batson claim arises only in the context of an allegation of ineffectiveness of counsel, an appellant is not entitled to the benefit of the burden of persuasion as to whether there is a race-neutral explanation for the prosecutor's use of peremptory challenges. Commonwealth v. Uderra, 862 A.2d 74, 86 (Pa. 2004). Rather, the appellant bears the burden throughout the inquiry and must demonstrate "actual, purposeful discrimination by a preponderance of the evidence," as well as meeting the "performance and prejudice" standard for demonstrating counsel's ineffectiveness discussed above. Id. at 87. To satisfy his burden, an appellant raising a Batson claim must make a record specifically identifying the race of all the venirepersons removed by the prosecution, the race of the jurors who served, and the race of the jurors acceptable to the Commonwealth who were stricken by the defense. See Commonwealth v. Sepulveda, 55 A.3d 1108, 1132 n.23 (Pa. 2102). (noting that we have required information about race of potential jurors peremptorily challenged by the Commonwealth, the race of potential jurors acceptable to the Commonwealth but peremptorily challenged by the defense, and the composition of the jury selected).

As noted above, in the instant case, Appellant did not raise a Batson claim at trial or on direct appeal. According to Appellant, trial counsel did not object to any of the Commonwealth's peremptory challenges and did not make a record of the race of jurors struck and accepted by the Commonwealth. Appellant further argues that he attempted to establish the race of the remaining jurors during the PCRA proceeding, but that the PCRA court erroneously denied his motion for discovery relating to juror race. Nevertheless, Appellant asserts he was able to determine the race of many of the jurors by using voter registration records and obtaining affidavits from certain jurors, which enabled him to make the following proffer:

> Leaving aside those jurors struck for cause or struck by the
> defense before the Commonwealth made a choice whether

to accept or strike the juror, there were thirty-nine (39) potential jurors available for peremptory strikes by the prosecutor. Of these 39 people whom the prosecutor had an opportunity to strike, 15 were black, 16 were white, and 8 are unknown. Of that almost evenly balanced pool, the prosecutor struck 9 blacks, 3 whites, and 6 unknown. By contrast, the prosecutor accepted 6 blacks, 14 whites, and 1 unknown.

Brief of Appellant at 50 (quoting Appellant's Response to Commonwealth's Motion to Dismiss). Appellant contends that the "pattern of strikes is grossly disproportionate," Brief of Appellant at 50, and, in his brief to this Court, he alleges that, following his proffer, "the Commonwealth conceded that Appellant was entitled to an evidentiary hearing on his Batson claim." Id. (referencing letter dated July 8, 2005 from ADA Michelle Seidner to Judge Lineberger).

Upon review, we find no error in the PCRA court's denial of Appellant's request for discovery, funds, an evidentiary hearing, and relief based on his Batson claim. With respect to Appellant's request for an evidentiary hearing, the decision whether to grant an evidentiary hearing is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. Sepulveda, 55 A.3d at 1134. As discussed above, after the Commonwealth filed its initial motion to dismiss, Appellant responded that he was entitled to an evidentiary hearing on, *inter alia*, his Batson claim. See Appellant's Consolidated Response to Commonwealth's Motion to Dismiss, 7/12/02. On May 6, 2005, in response to a motion by the Commonwealth, the PCRA court issued notice of its intent to dismiss Appellant's Amended PCRA petition as without merit. On June 3, 2005, however, the Commonwealth advised Appellant and the court that it would not object to an evidentiary hearing on certain limited issues, including Appellant's Batson claim, in light of the fact that this Court had recently remanded several capital cases for evidentiary hearings.

Accordingly, the PCRA court scheduled an evidentiary hearing on Appellant's Batson claim for June 15, 2005. However, on June 8, 2005, defense counsel advised the court by letter that (1) he was unable to attend the scheduled hearing; (2) he did not believe it was necessary for him attend the hearing if the court simply intended to dismiss Appellant's Amended PCRA petition; and (3) if the court did not intend to dismiss the petition, he was requesting the matters be relisted so that he could appear. Accordingly, the PCRA court relisted the matter for July 13, 2005. In a letter dated June 21, 2005, however, defense counsel objected to the hearing, suggesting, inter alia, that it was unfair for the Commonwealth to agree to an evidentiary hearing when it previously maintained that no hearing was warranted, and that, if the court intended to conduct an evidentiary hearing, the judge should recuse himself. Counsel further averred:

> If the Court does anything other than dismiss these cases, we will need the Court to set aside no fewer than three consecutive weeks for these protracted hearings. In addition, I will need to request substantial expert funds and file various motions, including additional discovery motions, in order to properly present our case.
>
> Fifth, if the Court is inclined to accede to the Commonwealth's new position, then we intend to file a formal motion for sanctions to address its unprofessional conduct. These should include an Order precluding the Commonwealth from cross-examining any defense witnesses, from presenting any witnesses, and from making any written or oral argument.
>
> . . . [W]e continue to maintain our long-held position that the issues we raised deserve an evidentiary hearing, but we only want an evidentiary hearing if it can be fair.

Letter from Daniel Silverman to Judge Lineberger, 6/21/05, at 3.

On August 19, 2005, the PCRA court issued an order denying Appellant's motion for recusal, and scheduling a hearing for September 15, 2005, on the issues of (1) Appellant's Batson claim; (2) doctor and family member mitigation testimony at the penalty phase of Appellant's trial; and (3) after-discovered/recantation witnesses. On August 31, 2005, Appellant's counsel filed another motion for continuance seeking to have the hearing rescheduled. Before acting on the motion, Judge Lineberger retired, and, in December 2005, the cases were assigned to the Honorable William Mazzola, following which time Appellant filed additional motions for discovery and expert funds, and alleging newly discovered Batson claims, all of which Judge Mazzola denied.

We set forth the above procedural history to demonstrate that Appellant was offered an evidentiary hearing on his Batson claim, but repeatedly frustrated the PCRA court's attempt to conduct the hearing. Accordingly, he cannot now complain that he was denied a hearing. Thus, we find no merit to Appellant's claim that the PCRA court improperly denied him an evidentiary hearing.

Likewise, we reject Appellant's claim that the PCRA court improperly denied his request for discovery. Discovery in death penalty collateral proceedings is permissible only upon leave of court, and only for good cause shown. Pa.R.Crim.P. 902(E)(2). We review a PCRA court's denial of discovery for an abuse of discretion. Commonwealth v. Sattazahn, 952 A.2d 640, 662 (Pa. 2008). In his discovery request, Appellant sought documents produced in a civil suit filed by Bruce Sagel against Philadelphia Magazine in June 1997. In the lawsuit, which was withdrawn in December 1997, Sagel claimed that the magazine's publication of comments he was alleged to have made during a 1990 lecture on jury selection defamed him. Appellant requested copies of Sagel's answers to interrogatories and request for production of documents, as well as Sagel's deposition transcript, pertaining to the lawsuit. In addition, Appellant sought copies of

Sagel's lecture notes.  See Appellant's Motion for Discovery, 2/21/06.  According to Appellant, the documents he sought were necessary to enable him to meet his burden of establishing a *prima facie* case of discrimination under Batson.  However, this Court has determined that information relating to the Sagel lecture notes is insufficient to establish the required purposeful discrimination.  Commonwealth v. Ligons, 971 A.2d 1125, 1145 n.19 (Pa. 2009).  Thus, Appellant's motion for discovery was unsupported by good cause, and the PCRA court did not err in denying Appellant's motion.  For the same reason, the PCRA court's denial of Appellant's request for funds to retain experts, including Professor David Baldus, see infra, to testify in support of his Batson claim was not erroneous.

Finally, with regard to the merits of Appellant's Batson claim, we hold that Appellant is not entitled to relief.  As noted above, Appellant contends that the prosecutor struck 9 of 15 potential African American jurors, but struck only 3 of 16 potential Caucasian jurors, and 6 of 8 unknown jurors, resulting in a "grossly disproportionate" pattern of strikes.  Appellant's Brief at 50.  Initially, the Commonwealth contends that, by failing to make a record of the race of potential jurors who were acceptable to the Commonwealth, but excluded by the defense, Appellant is unable to establish even a *prima facie* case of discrimination.   The fact that the prosecutor struck more African Americans than Caucasians, in and of itself, is insufficient to demonstrate purposeful discrimination when considering the totality of the circumstances.  Ligons, 971 A.2d at 1144.  Moreover, as Appellant fails to identify the racial composition of his jury, we lack an adequate record upon which to evaluate his Batson claim.  See Sepulveda, 55 A.3d at 1132 n.23.  Accordingly, we conclude Appellant has failed to establish purposeful discrimination based on the prosecutor's use of preemptory strikes.

Nevertheless, Appellant, in further support of his contention that the prosecution engaged in purposeful discrimination, makes an oft-asserted claim of a culture of discrimination in the Philadelphia District Attorney's Office.  Specifically, he asserts that an analysis by Professor David Baldus demonstrates that Roger King, the prosecutor in Appellant's case, was "*over two times more likely* to strike a black venire person compared to one who was not black."  Appellant's Brief at 52 (emphasis original).  Appellant also contends that a study by Professor Baldus documents a pattern of racial discrimination in jury selection in Philadelphia during the years 1981 through 1997.  Appellant further argues that the infamous 1987 training tape on jury selection prepared by former Philadelphia Assistant District Attorney Jack McMahon "supports an inference" that the Philadelphia District Attorney's Office engaged in purposeful discrimination, as do lecture notes taken during a training lecture for prosecutors delivered by Bruce Sagel in 1990.  Id. at 53.

This Court previously has held that evidence that a prosecutor was found to have violated Batson in a prior case is insufficient to demonstrate that the prosecutor impermissibly struck jurors in a later case.  Ligons, 971 A.2d at 1145.  As we have held that a *finding* of a prior Batson violation is insufficient to establish purposeful discrimination in a subsequent case, Appellant's mere allegation that the prosecutor in his case "was over two times more likely" to strike an African American juror than a Caucasian juror cannot support his claim of purposeful discrimination.

With regard to the McMahon contention, we have repeatedly emphasized that the McMahon training tape is not sufficient to establish a Batson violation in a particular case, particularly where, as here, "the prosecutor at an appellant's trial was someone other than McMahon, and the time of the appellant's trial was temporally remote from the creation of the videotape."  Commonwealth v. Jones, 951 A.2d 294, 305 (Pa. 2008).

We likewise have determined that the Baldus study and the Sagel lecture notes are insufficient to establish purposeful discrimination. Ligons, 971 A.2d at 1145 n.19. Thus, as Appellant has failed to demonstrate purposeful discrimination, the PCRA court did not err in denying him relief on his Batson claim.

### N. Denial of Evidentiary Hearing and Effective Counsel at Sentencing

Appellant next contends that the PCRA court erred in denying without an evidentiary hearing his claim that he did not receive effective assistance of counsel at the sentencing phase of his trial. Specifically, Appellant alleges that counsel "conducted no meaningful pre-trial mitigation investigation; failed to develop more than the most minimal life history mitigation; failed to develop mental health mitigation evidence; presented to the jury virtually none of the compelling mitigation available to the defense; and failed to explain to the jury the evidence of [Appellant's] membership in a gang." Brief of Appellant at 57-58. Appellant further asserts that counsel has a duty to thoroughly investigate available mitigating evidence before deciding whether such evidence should be presented, citing Williams v. Taylor, 529 U.S. 362 (2000). Id. at 58.

We reiterate that the decision whether to grant an evidentiary hearing is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. Sepulveda, 55 A.3d at 1133-34. In the instant case, trial counsel presented four witnesses at Appellant's penalty trial, including three of Appellant's foster sisters, Lydia Banks, Lillian White, and Linda Curry. These witnesses testified, *inter alia*, about Appellant having lived his childhood in foster care, having been abandoned by his mother and father; that they lived in poverty; but were taught "right from wrong" and to "respect others." N.T., 1/10/91, at 8.60. They also offered that, since being incarcerated, Appellant was "changing his life around," embracing religion and

education, and that he was like a "new person." Id. at 8.56. In his closing to the jury, trial counsel argued, *inter alia*:

> It is a rational analysis -- beg [sic] you for his life as his foster sisters did, but I beg it based on the evidence. I beg it based on the evidence of mitigation, which I suggest to you would outweigh the aggravating circumstance in this case because there is hope and none of you can rule out the fact that he is changing and reforming and there is no contrary testimony to that. What happened happened and two years later there is change, there is reform, there is hope, and give him life, give him the opportunity to spend the rest of his life in prison. Because he deserves to live. By the evidence in this case.

Id. at 8.86-87.

Thereafter, during its charge to the jury, the trial court instructed the jury that it could consider two mitigating circumstances: Appellant's age at the time of the crime, and any other evidence regarding the character and record of Appellant and the circumstances of the offense. Id. at 8.88. The jury, however, found no mitigating circumstances.

Appellant now argues that trial counsel was ineffective for failing to contact other "readily available witnesses," including an additional foster sister, Appellant's foster mother, and Appellant's birth mother. Brief of Appellant at 59. According to Appellant, these additional witnesses would have established, *inter alia*, that Appellant was abused as a child; had slow development; and sustained two head injuries. Appellant further contends that, despite knowing that Appellant had been in foster care, trial counsel failed to obtain records from the Women's Christian Alliance, the organization which supervised his foster care; his records from the Philadelphia public schools which Appellant attended; and records from Pennhurst State School and Hospital, all of which purportedly would have documented his birth mother's history of mental retardation and impairments and his own difficulties in school. Appellant also claims that trial counsel

was ineffective for failing to present a mental health expert who would have testified that Appellant suffered from a variety of mental disorders as a result of his foster care environment and childhood poverty. Further, Appellant claims it was incumbent upon trial counsel to provide evidence to explain to the jury why Appellant joined a gang.

The Commonwealth notes that Appellant's foster sisters testified that they were raised in a "supportive family," and that, in purported affidavits Appellant included in his Supplemental Reproduced Record describing Appellant's alleged abusive childhood, they "abruptly changed their tune." Id. at 50. Based on the above, the Commonwealth maintains that trial counsel's "decision to present [Appellant] as drawn to a 'bad crowd' due to a lack of parental love and a deprived childhood, who was now a changed man with a supportive and loving family, was objectively reasonable," and cannot form the basis of an ineffectiveness claim. Id. at 49. Additionally, the Commonwealth asserts that Appellant has failed to establish prejudice by showing that, had the additional evidence been presented and considered by the jury, the jury would have found a mitigating circumstance that outweighed the "undisputed and substantial aggravating circumstance of [Appellant's] significant history of killing people." Id.

In his Amended PCRA Petition, Appellant alleged that trial counsel was ineffective for failing to discuss the proper weighing of the sole aggravating circumstance against each mitigating circumstance, rather than against mitigating circumstances collectively. Amended PCRA Petition at 93 ¶ 180 et seq. Appellant's present allegations regarding trial counsel's failure to contact other family members, obtain his school and foster care records, and present mental health evidence and evidence of Appellant's membership in a gang, however, were raised for the first time in his Supplemental Amended PCRA Petition, filed three months later. As discussed

supra, the PCRA court does not appear to have authorized such filing.  Thus, Appellant's claim is waived as a result.  See supra pp. 7-9.[14]

Moreover, as we have discussed above with regard to Appellant's Batson claim, after the Commonwealth filed its initial motion to dismiss Appellant's Amended PCRA Petition, Appellant argued that he was entitled to an evidentiary hearing on, *inter alia*, his Batson claim and the issue of whether trial counsel was ineffective for failing to investigate, prepare, and present relevant mitigating evidence at sentencing.  Although the Commonwealth agreed to an evidentiary hearing on these issues, and, although Judge Lineberger scheduled a hearing on several occasions, Appellant repeatedly sought to delay the hearings; sought recusal of the PCRA court judge; demanded "substantial expert funds"; demanded three consecutive weeks during which to conduct "protracted" hearings;  threatened to file a formal motion for sanctions against the Commonwealth; and sought an order that would preclude the Commonwealth from "cross-examining any defense witnesses, from presenting any witnesses, and from making any written or oral argument."  Letter from Daniel Silverman to Judge

---

[14] We also note that in a separate argument section of his Amended PCRA Petition, Appellant contends that his death sentence should be vacated because the trial court's instructions to the jury at the penalty phase erroneously advised the jury how to weigh the aggravating and mitigating circumstances.  As part of this argument, Appellant asserts:

> The fact that on paper this jury apparently did not find even one mitigating circumstance does not somehow render "harmless" this significant error.  As a general matter, so many grievous errors were committed in connection with the otherwise applicable mitigating circumstances that it is not surprising that no mitigation was found.  First, trial counsel failed to introduce abundant mitigating evidence that would have supported at least three (3) distinct mitigators.  See Supplemental Amended Petition.

Amended PCRA Petition at 94-95 ¶183.  However, the supplemental amended PCRA petition to which he refers was not of record at the time.

Lineberger, 6/21/05, at 3. As we concluded with regard to Appellant's <u>Batson</u> claim, the absence of a hearing on Appellant's mitigation claim was the result of his own dilatory tactics and excessive demands, and he cannot now complain that he was improperly denied a hearing.

### O. Preclusion of Mitigation Evidence of Conversion to Islam

Appellant argues that, at trial, he attempted to enter into evidence that he had converted to Islam, was an active and devout Muslim who denounced violence, and had adopted and followed religiously-based guidelines for conducting one's affairs. Appellant claims that witnesses were prepared to testify to these facts and the sincerity of his conversion. Appellant notes that, on direct appeal, our Court rejected the trial court's rationale for precluding this evidence — the prohibition on questioning a witness regarding his or her religious beliefs, 42 Pa.C.S.A. § 5902(b) — and determined that it could be admissible and relevant to the character of a defendant; and found appellate counsel had failed to articulate or support Appellant's claim that he had been prejudiced by the ruling. Appellant now challenges the PCRA court's determination that it would have been inadmissible for a witness to testify that Appellant had undergone a transformation. Moreover, Appellant takes issue with the PCRA court's assertion that mention of the words "Muslim" or "Islam" should be "avoided like the plague." PCRA Court Opinion, 2/14/11, at 57. According to Appellant, the court's view as to the wisdom of offering such testimony was irrelevant, as it was for Appellant to present the evidence he wanted to the jury. Appellant maintains that he was prejudiced by this exclusion of testimony, as the jury was not presented with a full picture of Appellant's transformation, "that it was brought about through a genuine religious conversion and what that religion teaches," and that he was prevented from explaining why the jury should credit that evidence. Brief of Appellant at 73.

The Commonwealth points to our Court's resolution of this issue on direct appeal determining that Appellant had not established prejudice and that Appellant was able to present evidence about his moral philosophy and that he was involved in a new religion. Reid, 642 A.2d at 459-60. Ultimately, the Commonwealth argues that Appellant fails to explain how testimony identifying him as a Muslim, as opposed to some other specific faith, was relevant to mitigation or would have changed the outcome.

The PCRA court noted that the underlying claim was previously litigated on direct appeal, and that Appellant's new claim on collateral review, presenting all relevant and controlling authority and proof of prejudice was "specious." PCRA Court Opinion, 2/14/11, at 56. Specifically, the court reasoned that Appellant was permitted at trial to present evidence of his adherence to a moral philosophy and that he was involved in a new religion, and that this philosophy endorses morality and requires one to change and reform. While noting that the trial court prohibited Appellant from mentioning Islam, the PCRA court concluded Appellant failed to establish prejudice.

Initially, we note that this issue was not raised on appeal, is a distinct issue, and, thus, has not been previously litigated. Collins, supra. In essence, Appellant asserts before us that trial and appellate counsel did not do a sufficient job litigating this issue. Assuming, *arguendo*, there is merit to Appellant's claim, he still has not established that he was so prejudiced as to afford him relief. As noted by the Commonwealth, the PCRA court, and our Court on direct appeal, Appellant was able to present evidence about his adherence to a moral philosophy, and that he was involved in a new religion, and that this philosophy endorses morality and requires one to change and reform. In essence, the only information Appellant was denied offering was the specific religion he had chosen to practice. While we recognize that the exclusion of mitigation factors can be reversible error, Skipper v. South Carolina, 476 U.S. 1 (1986), and that religious

values could be relevant to the e(8) "catchall" mitigator,[15] in light of the circumstances surrounding this matter, including the aggravator of a significant history of violent felonies, we find that the trial court's prohibiting Appellant from naming his religion did not result in such prejudice that the result in his matter would have been different. Thus, we find that Appellant is not entitled to relief.

## P. Trial Court Error in Permitting Commonwealth to Prove Aggravating Circumstance with Inadmissible Hearsay

Appellant next argues the trial court erred in permitting the Commonwealth, over defense objection, to prove its aggravating circumstance with inadmissible hearsay, and that appellate counsel was ineffective for failing to preserve and litigate this issue. To establish that Appellant had a significant history of violent felony convictions, the Commonwealth introduced testimony from Detective Chester Koscinski that Neil Wilkinson was shot in the head, and that the jury convicted Appellant of first-degree murder, and returned a sentence of life imprisonment. Similarly, Detective Paul Raley stated that Michael Waters was murdered by a gunshot wound to the chest, the jury convicted Appellant of first-degree murder therefor, and that Appellant was sentenced to death. Trial counsel objected to the testimony on hearsay grounds, but the trial court overruled his objections. Counsel did not pursue this claim on appeal.

Appellant argues that, because Detective Koscinski's testimony was based on the reports of an eyewitness and the medical examiner, and Detective Raley's testimony was based on what others told him, the testimony of both men was inadmissible hearsay, which violated his right to confront and cross-examine witnesses. Brief of Appellant at 75-76. Appellant claims there was no way to cross-examine these officers

---

[15] 42 Pa.C.S.A. § 9711(e)(8).

as their testimony was based upon the reports of others. Appellant contends there was no reasonable basis for appellate counsel not to raise this issue on appeal.

The Commonwealth disputes Appellant's contention that the detectives' testimony was improper hearsay, because the detectives had "first-hand information as to the crimes − they saw the victims' bodies and were in court when the verdicts were delivered." Brief of Commonwealth at 64. Thus, the Commonwealth contends that they were competent witnesses as to the aggravating circumstance. Id. Further, the Commonwealth claims that a court clerk also testified and produced official court records for both cases. According to the Commonwealth, each detective gave a one-sentence description of the murder with no detail beyond the manner of death.

Appellant cannot succeed on his claim that appellate counsel was ineffective in failing to raise this issue on appeal because Appellant's underlying claim that the trial court erred in admitting the evidence is without merit. Detective Koscinski testified that he participated in both the investigation and the arrest of Appellant in connection with the Wilkinson murder, and that he was present for the trial in that case. The same was true for Detective Raley. Appellant fails to offer evidence in support of his allegation that the detectives' testimony was based only on the reports of others, thereby constituting hearsay. Accordingly, the trial court did not err in allowing the Commonwealth to introduce this evidence, and appellate counsel was not ineffective for failing to raise the issue on appeal.

## Q. Failure to Instruct That Life Imprisonment is Without Parole

Appellant next argues that his due process rights were violated when the trial court failed to give the jury a "life-means-life" instruction at his sentencing hearing pursuant to Simmons, supra. Appellant contends that, because the Commonwealth put

his future dangerousness at issue, the trial court was required to instruct the jury that, if sentenced to life imprisonment, he would be ineligible for parole.

As the Commonwealth points out, however, Simmons was decided in 1994 and Appellant's trial was in 1991, predating Simmons by approximately three years. Prior to Simmons, the law in this Commonwealth prohibited an instruction to the jury that life imprisonment meant life without parole. Commonwealth v. Edwards, 555 A.2d 818, 830-31 (Pa. 1989). Therefore, because, at the time of Appellant's trial, a Simmons instruction was forbidden, the trial court did not err in failing to give such an instruction *sua sponte*. Further, trial counsel cannot be deemed ineffective for failing to request such an instruction, and we do not find counsel ineffective for failing to anticipate changes in the law. Commonwealth v. Gibson, 688 A.2d 1152, 1169 (Pa. 1997). Accordingly, Appellant's claim fails.

### R. Cumulative Effect of Errors

Appellant argues that, if this Court concludes that he is not entitled to relief based on the prejudicial effect of any single error, he is entitled to relief because of the cumulative prejudicial effect of all of the errors set forth in his appellate brief. It is well-settled that "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." Commonwealth v. Johnson, 966 A.2d 523, 532 (2009). However, we have recognized that, "if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." Sepulveda, 55 A.3d at 1150 (citations omitted). In the instant case, we noted a lack of prejudice as the sole reason regarding the claim that Appellant was precluded from informing the jury that he had converted to Islam and was an active and devout Muslim. After review of this issue, we are confident that there is no cumulative error warranting relief.

## S.  Failure to Hold an Evidentiary Hearing

Appellant makes a generic claim that he asked for an evidentiary hearing on "the claims and all disputed issues of fact."  Brief of Appellant at 81.  Yet, other than general assertions regarding the PCRA court's error for failing to hold a hearing, Appellant has failed to provide any details, here, to allow meaningful judicial review.  Moreover, we have addressed specific instances above where Appellant has raised as error the failure of the PCRA court to hold a hearing.  Thus, we reject Appellant's general claim of PCRA court error.

## T.  Trial Court Error in Refusing to Address Appellant's Petition for Permission to Review Police Archive Files

Appellant next contends the PCRA court erred in denying his request to review police files for exculpatory evidence.   The basis for Appellant's request was his allegation that the Commonwealth failed to disclose the extent of incentives provided to Commonwealth witnesses at trial, and an allegation that the police archive files have been found to contain Brady material in other cases, and likely contain similar material in this case, including any records regarding the Commonwealth providing incentives to Michael Dozier.[16]  Brief of Appellant at 84.

The Commonwealth, in arguing Appellant was not entitled to review the police files, suggests Appellant's request was a mere fishing expedition, as Appellant's request is speculative and based upon three unrelated cases in which housing was provided to witnesses.  Brief of Commonwealth at 69-70.

As previously stated, a request for discovery during collateral proceedings is governed by Rule 902(E) of the Pennsylvania Rules of Criminal Procedure, which allows for discovery upon leave of court after a showing of good cause.  A showing of

---

[16] We addressed a variant of this regarding Dozier in Part II, D.

good cause requires more than just a generic demand for potentially exculpatory evidence that might be discovered if a defendant is permitted to review the requested materials. Sattazahn, 952 A.2d at 662. The PCRA court, in addressing Appellant's claim, observed, *inter alia*:

> the Petition requesting production of the police archive file alleges . . . (3) that the Commonwealth failed to disclose any incentives it provided to the witnesses to testify in the Lisby murder case, (4) that PCRA counsel was informed that the Defender Association of Philadelphia has in its possession a police archives file, but that the file has been ordered sealed and the Association has refused to turn it over, (5) that ". . . it has been alleged that similar police files in other cases have revealed the existence of previously undisclosed exculpatory evidence, . . .", and concludes with a general discussion of the law requiring the prosecution to turn over all exculpatory material in its possession.

PCRA Court Opinion, 2/14/11 at 112-13. The PCRA court opined there is "a complete lack of any evidence to support the [Appellant's] other allegations." Id. at 113. We agree with the PCRA court that Appellant's request for discovery of the police files, which primarily was based on speculation that potentially exculpatory evidence *might exist* because exculpatory evidence has been found in police files in other cases, was insufficient to satisfy the good cause requirement. See Commonwealth v. Collins, 957 A.2d 237, 271-72 (Pa. 2008) (discovery request based on mere speculation of potential exculpatory evidence was the same sort of generic plea for hypothetical evidence that we have rejected as falling far short of the "good cause" requirement); Commonwealth v. Bryant, 855 A.2d 726, 750 (Pa. 2004) (rejecting discovery request of petitioner who "merely speculate[d] as to possible trial court errors, or potentially exculpatory evidence"); Carson, 913 A.2d at 261 (rejecting "fishing expedition for possible exculpatory evidence"). Thus, we find no abuse of discretion by the PCRA court in denying Appellant's discovery request to review the police files.

**U. Sufficiency of Evidence to Support Conspiracy Conviction at First Trial**

On April 17, 2012, our Court granted Appellant's motion to amend his brief to raise an additional issue. In this final issue, Appellant claims that the evidence, in particular Boston's testimony, was insufficient to support the conspiracy conviction at Appellant's first trial and the accomplice instructions given at his second trial. Specifically, Appellant claims that, following the reading into the record of Boston's testimony from Appellant's first trial, the only conclusion the jury could have reached was that Boston was invoking his privilege against self-incrimination because he was afraid he would be found to be the actual shooter. According to Appellant, Boston's testimony failed to establish "concerted action or shared motive with Appellant." Amended Brief of Appellant at 1. Thus, Appellant contends the conspiracy charge was not supported by the evidence in this case, and that counsel was ineffective for failing to object to the instruction at trial. Appellant claims that, as trial counsel's strategy was to challenge that Appellant participated in any way in the killing, counsel had no reasonable strategy for failing to object. Moreover, Appellant submits he was prejudiced, as the jury rendered a unanimous verdict only as to conspiracy at the first trial.

Further, at Appellant's second trial, Appellant claims that trial counsel failed to object to the accomplice liability instruction which "the Court appeared to give as a substitution for the conspiracy charge." Amended Brief of Appellant at 2. Again, Appellant argues that there was no reasonable trial strategy not to object and he was prejudiced by this instruction by "providing the jury with an unfair link to the first degree murder charge." Amended Brief of Appellant at 2. Thus, Appellant maintains that the conspiracy charge and the instructions for accomplice liability were not supported by the evidence.

The Commonwealth responds that our Court reviewed the sufficiency of the evidence on direct appeal. Reid, supra. The Commonwealth points out that, after independent review of the evidence, including Boston's testimony, our Court found that sufficient evidence existed to support Appellant's convictions. Thus, according to the Commonwealth, Appellant's sufficiency of the evidence claim has been finally litigated. Moreover, the Commonwealth emphasizes that Appellant failed to acknowledge that the proper standard of review applicable to sufficiency challenges views the evidence in the light most favorable to the Commonwealth as verdict winner. Further, the Commonwealth stresses that credibility determinations, such as that concerning Boston's testimony, are for the jury. Regarding Appellant's claim that the evidence was insufficient to support the accomplice instruction, the Commonwealth shows that Appellant and Boston worked for the JBM as an enforcer and dealer, respectively. The victim had taken crack cocaine without paying for it, and Appellant and Boston went to the victim's home and escorted him to the street corner, where he was shot. Based on these facts, the Commonwealth argues the trial court properly gave an accomplice instruction.

When reviewing a claim challenging the sufficiency of the evidence, an appellate court views "the evidence in the light most favorable to the Commonwealth as verdict winner to determine if the evidence and all reasonable inferences derived therefrom are sufficient to establish all the elements of the offense beyond a reasonable doubt." Commonwealth v. Vandivner, 962 A.2d 1170, 1176 (Pa. 2009). First, our Court conducted a sufficiency review on direct appeal and affirmed Appellant's convictions. Moreover, as noted above by the Commonwealth, there is more than sufficient evidence from trial to sustain the instruction for accomplice liability. Appellant's claim fails on the merits.

## III. Conclusion

In conclusion, for the reasons stated herein, we affirm the order of the PCRA court dismissing all of Appellant's claims.

Mr. Chief Justice Castille and Messrs. Justice Eakin, Baer, McCaffery and Stevens join the opinion.

Mr. Justice Saylor files a dissenting opinion.