J-A03007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD EUGENE WINFREE | |
| Appellant | No. 1293 MDA 2014 |

Appeal from the Order Entered July 7, 2014
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s): CP-31-CR-0000431-2010

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED MARCH 16, 2015**

Appellant, Donald Eugene Winfree, appeals from the July 7, 2014 order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

On March 16, 2011, a jury convicted Appellant of simple assault.[1]  A prior panel of this Court summarized the relevant trial testimony as follows.

> Commonwealth witness Dwayne Smith testified as follows.  On July 24, 2010, he was at The County Line Inn, a local bar in Mount Union, Pennsylvania, with his wife, Paula.  The couple had been separated … at that time.  Appellant, Mrs. Smith's boyfriend, was also present at the restaurant.  Sometime before 2:00 a.m., the Smiths left the bar together.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.S.C.S. § 2701(a)(1).

Mr. Smith stated that "as we was leaving," Appellant "was yelling at" Mrs. Smith about a $200[.00] debt that she owed him. When the Smiths left the bar, they went to a local convenience store and then to Mrs. Smith's apartment in Hartman Village, Mount Union. The front of the apartment had two doors leading to the inside, an exterior door consisting of a metal-framed screen door and an interior door that opened into the apartment. The screen door was locked.

Around 2:00 a.m., approximately fifteen minutes after the Smiths reached the apartment, Appellant arrived and began "beating on her door and asking about the money she owed." Mrs. Smith instructed her husband not to open the door. Appellant continued to shout and swear outside the apartment and to pound the door.

After listening to Appellant for ten minutes, Mr. Smith opened the interior door, but the screen door remained closed and locked. He intended to ask Appellant to return the following day for his money. At that point, Appellant said, "[Y]ou give me my F-in' money," and Mr. Smith responded, "I don't owe you no money." Mr. Smith stated that as soon as the interior door was ajar, Appellant "ripped the screen door [open] and come rushing in." Appellant slammed into Mr. Smith and tackled him. As a result of that action, both men were thrown to the floor and began to engage in a physical fight. During the fight, Appellant struck Mr. Smith. Mr. Smith punched Appellant in return because he was "protecting [him]self."

During cross-examination, Mr. Smith denied confronting Appellant or leaving the apartment. Mr. Smith repeated that as soon as he opened the interior door, Appellant "come flying through the [screen] door after he ripped it open, tackled me. We went down and rolled around a little bit." When Appellant came running into the apartment and tackled Mr. Smith, the victim was in fear of serious bodily harm from Appellant. In the ensuing fight,

Appellant suffered wounds to a rib and a broken eye socket, but Mr. Smith justified his response to the attack by explaining that Appellant kept trying to assault him. The witness delineated, "[h]e just kept coming and I just kept defending myself." The witness posed, "[w]hat do you want me to do? I'm not going to stand there and let him hurt me. It's either he gets hurt or I get hurt. I protected myself." At some point, Appellant said, "I had enough," and the fight ceased. Mr. Smith insisted, "[w]hen Appellant stopped coming, I stopped hitting him. When he said he had enough, I even helped him lay down on the couch because he was feeling bad.

Mrs. Smith, who was still Appellant's girlfriend at the time of the trial, confirmed that she left The County Line Inn in the early morning hours of July 24, 2010, with Mr. Smith, he drove her to her apartment, and Appellant arrived soon thereafter and began to knock continually on the front door. Mrs. Smith also acknowledged that Appellant ripped open the locked screen door after Mr. Smith opened the interior door. She maintained that she did not know what occurred after Appellant forcibly opened the locked screen door and only observed them standing and then fighting on the floor. While Mrs. Smith insisted at trial that she did not see Appellant tackle Mr. Smith, she was given a copy of a written statement that she gave to Mount Union police the day after the incident. After reviewing the statement Mrs. Smith admitted telling police that Appellant "body slammed Dwayne [Smith]."

Based on the Commonwealth evidence, a jury convicted Appellant of simple assault—attempt to cause the victim serious bodily injury. It rejected a claim of self-defense after being given a jury instruction on that concept due to Appellant's description of the events of July 24, 2010.

- 3 -

*Commonwealth v. Winfree*, 50 A.3d 236 (Pa. Super. 2012) (unpublished memorandum at 2-4) (citations omitted), *appeal denied*, 57 A.3d 70 (Pa. 2012).

On June 17, 2011, the trial court sentenced Appellant to three to 12 months' imprisonment.[2] Sentencing Order, 6/17/11, at 1. On May 8, 2012, this Court affirmed Appellant's judgment of sentence. *Winfree*, *supra* at 8. On November 21, 2012, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Winfree*, 57 A.3d 70 (Pa. 2012). Thereafter, on December 27, 2012, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel on January 7, 2013, and counsel filed an amended PCRA petition on March 4, 2013. The PCRA court held an evidentiary hearing on March 7, 2014 and dismissed

---

[2] On August 6, 2014 the PCRA court entered an order staying execution of Appellant's sentence pending disposition of the instant appeal. Trial Court Order, 8/6/14. *See generally, e.g.*, 42 Pa.C.S.A. § 9543(a)(1)(i) (stating that to be eligible for PCRA relief, the petitioner must show that he or she is "currently serving a sentence of imprisonment, probation or parole[]").

Appellant's petition on July 7, 2014.[3]  On July 29, 2014, Appellant filed the

instant timely appeal.[4]

On appeal, Appellant raises the following issues for our review.

[W]hether [Appellant's] counsel at trial was
ineffective:

1.    When he failed to present evidence and
argument, and request an instruction to the jury,
regarding the lesser offense of [s]imple [a]ssault by
[m]utual [c]onsent[?]

2.   When he failed to adequately present evidence
and argument regarding the element of intent[?]

3.  When he failed to present evidence regarding the
alleged victim's prior history of violence[?]

Appellant's Brief at 2.

When reviewing PCRA matters, we are mindful of the following

principles.

We consider the record in the light most favorable to
the prevailing party at the PCRA level.  This review is

---

[3] On May 15, 2014, the PCRA court granted appointed counsel's motion to withdraw her appearance based on her assertion that continued representation would impose a financial hardship.  Trial Court Order, 5/15/14; *see* Motion to Withdraw Appearance, 4/30/14, at 1-3 (unnumbered).   The PCRA court appointed new counsel to represent Appellant on July 9, 2014.  Trial Court Order, 7/9/14.

[4] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.  Specifically, the trial court adopted its reasoning from its July 7, 2014 opinion, dismissing Appellant's PCRA petition, for its resolution of Appellant's first issue on appeal.  Trial Court Opinion, 8/28/14, at 2.  The trial court then addressed Appellant's remaining issues.  *Id.* at 2-3.

limited to the evidence of record and the factual findings of the PCRA court. We afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. Accordingly, as long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. Nonetheless, where the issue pertains to a question of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Pander***, 100 A.3d 626, 630 (Pa. Super. 2014) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, --- A.3d ---, 502 EAL 2014 (Pa. 2015). Further, in order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at Section 9543(a)(2) of the PCRA. 42 Pa.C.S.A. § 9543(a)(2). One such error, which provides a potential avenue for relief, is ineffective assistance of counsel. ***Id.*** § 9543(a)(2)(ii). The issues raised must be neither previously litigated nor waived. ***Id.*** § 9543(a)(3).

Additionally, "[i]n order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in ***Strickland v. Washington***, 466 U.S. 668 (1984)." ***Commonwealth v. Reid***, 99 A.3d 427, 436 (Pa. 2014). In Pennsylvania, adherence to the ***Strickland*** test requires a PCRA petitioner to establish three prongs. ***Id.*** Specifically, the petitioner must demonstrate "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of

- 6 -

counsel's error[.]" *Id.* We presume counsel has rendered effective assistance. *Commonwealth v. Rivera*, --- A.3d ---, 2014 WL 7404541, at *5 (Pa. 2014). Moreover, "[t]he reasonableness of counsel's conduct is objectively measured." *Commonwealth v. Daniels*, 104 A.3d 267, 281 (Pa. 2014) (citation omitted). We also observe "review of counsel's conduct cannot indulge the distorting effects of hindsight, but instead, counsel's performance must be judged in light of the circumstances as they would have appeared to counsel at the time." *Commonwealth v. Hill*, 104 A.3d 1220, 1240 (Pa. 2014) (citations and internal quotation marks omitted). With regard to the third prong, "prejudice [is] measured by whether there is a reasonable probability that the result of the proceeding would be different." *Daniels*, *supra*. "[I]f a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis." *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). "Additionally, counsel cannot be deemed ineffective for failure to raise a meritless claim." *Rivera*, *supra*. (citation omitted).

Instantly, Appellant challenges trial counsel's effectiveness on three separate bases. Appellant's Brief at 2. In Appellant's first claim of ineffectiveness, Appellant asserts that trial counsel was ineffective for failing to pursue a defense strategy of simple assault by mutual consent[5], a lesser-

---

[5] 18 Pa.S.C.S. § 2701(b).

- 7 -

graded offense, and by failing to seek a jury instruction on the same. *Id.* at 7. Appellant submits that "[a] fight involving mutual aggression is [] punished less severely than a one-sided assault[,]" and in the instant case, "the evidence overwhelmingly supports a conclusion that the incident was a mutual fight, rather than a one-sided attack." *Id.* at 8. In its opinion dismissing Appellant's PCRA petition, the PCRA court explained its rationale as follows.

> In this case[,] there was no evidence that suggested both parties agreed to fight. Further, the evidence, which the jury elected to believe, was that [Appellant] was the aggressor. Finally, it is clear that [Appellant] at all times has denied assaulting [Mr.] Smith.
>
> Accordingly, since there was no evidence that the assault began by mutual consent, an instruction on the subject matter of Section 2701(b)(1) would have been error. Therefore, trial counsel was not ineffective for not requesting that instruction or in failing to object to the failure of th[e trial c]ourt to instruct on the subject.

PCRA Court Opinion, 7/9/14, at 14-15. We conclude the record supports the trial court's ruling. *See Pander*, *supra*.

At the hearing on Appellant's PCRA petition, his trial counsel, Michael S. Gingerich, Esquire (Attorney Gingerich) testified regarding the defense strategy as follows.

[Commonwealth]:

Q. … What was the general trial strategy or your difference in defending this case?

[Attorney Gingerich]:

A. Well, the general theme which we discussed and we were proceeding under we were seeking a not guilty verdict in this case. [Appellant] certainly firmly I'm sure believes to this day that he was – did not assault Mr. Smith and Mr. Smith obviously from the injuries that [Appellant] sustained had clearly assaulted [Appellant]. We were looking for an acquittal. Like I said, we turned down pleas to – I think to [third-degree misdemeanor] and to summary harassment.[6] I mean [Appellant] wanted vindication is why the case was going to trial.

…

[The PCRA court]:

Q. You had rejected a plea to a summary offense?

A. Absolutely, yes. Because [Appellant] was looking for vindication. He said, I did not assault this guy. I came to the apartment under the circumstances he described in his testimony and he grabbed ahold me of (sic) and I tried to defend myself.

…

Q. You requested -- obviously because I gave it -- you requested instructions on self-defense?

A. Yes, because that was an important part of the defense theory. There was no doubt that there was contact, physical contact, between Mr. Smith and [Appellant]. [Appellant], I think, in his testimony described it as being purely defensive in nature, believed that was an appropriate and our best chance of getting an acquittal. And you always have to be careful arguing alternative in front of a jury. And again we were looking for a full acquittal, so we

---

[6] 18 Pa.C.S.A. § 2709 (a)(1).

- 9 -

weren't interested in getting up there and admitting to a [third-degree misdemeanor] assault but I think sometimes you diminish your defense if you, you know, say to the jury these are the facts but if you look at them this way, it could be a lesser offense. …

N.T., 3/7/14, at 11-13.

The PCRA court again asked counsel about the decision to pursue a self-defense theory and forego a strategy based on mutual consent.

[The PCRA court]:

Q.  Let me ask this question.  Am I correct – and I've known [Appellant] for a long time – but am I correct that [Appellant] made it very clear to you that he wanted you to present a self-defense defense in this case?

[Attorney Gingerich]:

A.  Again, we're looking -- we reject pleas.  We're looking for an acquittal. …

Q.  He wanted nothing to do with lesser included offenses, did he?

A.  No.  We rejected those and pleas to those and I think [Appellant] probably believes to this day that he was the victim of this.

*Id.* at 28-29.

Appellant also testified at the PCRA hearing and clarified that he was not interested in accepting a plea to simple assault in this case.  *Id.* at 51. Appellant further acknowledged he was offered and rejected a plea to a charge of harassment, for which he would be sentenced to one year of

probation. *Id.* As to his trial testimony, Appellant testified as follows at the PCRA hearing.

> [The Commonwealth]:
>
> Q. And you were asked [at trial] did you punch him or attempt to punch him, meaning [Dwayne] Smith or Mr. Smith?
>
> [Appellant]:
>
> A. Yes.
>
> Q. And your answer if you recall?
>
> A. No. I made a defensive move to try to stop him from attacking me.
>
> Q. So you never threw punches?
>
> A. I never hit him, no.

*Id.* at 52. It is clear from our review of the record that both Mr. Smith and Appellant claimed to act in self-defense, and both men testified the other was the aggressor. The PCRA court correctly highlights that there was no evidence this incident was by mutual consent to fight, and therefore, counsel was not ineffective for failing to seek an instruction thereon. Further, the testimony from the PCRA hearing undoubtedly supports Attorney Gingerich's position that Appellant was seeking an acquittal in this case. *See id.* at 11-13, 28-29, 51-52. Accordingly, we conclude Attorney Gingerich's decision to focus the defense on a self-defense theory, in light of the circumstances as they appeared to him at the time of trial, *i.e.* Appellant's rejection of a plea to harassment and Appellant's adamancy that he was defending himself

against Mr. Smith's attack, was a reasonable trial strategy. ***See Hill***, ***supra***. As a result, Appellant is not entitled to relief on this issue.

Next, Appellant claims counsel rendered ineffective assistance "for failing to adequately present evidence and argument regarding the element of intent." Appellant's Brief at 12. Appellant argues, "[a]lthough trial counsel made passing mention of the element of intent in his closing argument, he failed to adequately draw the jury's attention to the lack of the Commonwealth's evidence on this issue." ***Id.*** at 13. Further, Appellant advances, "[h]ad trial counsel emphasized the lack of evidence regarding intent, it would have provided a complete defense to [Appellant]." ***Id.*** at 14.

Although not specifically addressed in its opinion denying PCRA relief, in its opinion pursuant to Rule 1925, the PCRA court responded to this argument.

> Candidly, [the PCRA court] did not understand the point [Appellant's] counsel was attempting to make. Appellant at all times including during his testimony at [the PCRA] hearing flatly denied striking the victim. … [Attorney] Gingerich argued his client was not guilty because he never struck the victim which in the context of a trial for simple assault is an argument that subsumes an argument that he didn't intend to assault the victim.

PCRA Court Opinion, 8/28/14, at 2-3.

Our review of the trial transcript reveals Attorney Gingerich indeed argued that Appellant did not possess the requisite intent to injure Mr.

- 12 -

Smith.  **See** N.T., 3/16/11, at 98-103.  Further, as discussed above, Attorney Gingerich was seeking an acquittal for his client on the basis of self-defense.  He testified at the PCRA hearing, "I think if you look at [the closing argument as a] whole, it accurately conveys to the jury that his actions were legally excusable."  N.T., 3/7/14, at 33.

The record belies Appellant's claims that Attorney Gingerich did not dispute the Commonwealth's evidence of intent, and it was an objectively reasonable strategy for Attorney Gingerich to focus the defense on a theory of self-defense.  **See Daniels**, **supra**.   Therefore, under the circumstances as they appeared at the time of trial, Attorney Gingerich cannot be said to have rendered ineffective assistance on this basis.  **See Hill**, **supra**.

In Appellant's final claim of ineffectiveness, he avers, "trial counsel was ineffective for failing to present evidence regarding the alleged victim's prior history of violence."  Appellant's Brief at 14.  However, as to this claim, the PCRA court correctly observes, "[t]he final issue was not raised in the petition or addressed or argued at hearing."  PCRA Court Opinion, 8/28/14, at 4.

It is fundamental that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."  **Commonwealth v. Tejada**, --- A.3d ---, 2015 WL 62931, at *7 (Pa. Super. 2015) (citations omitted); **accord** Pa.R.A.P. 302(a).  Because Appellant failed to raise this

claim in his petition for PCRA relief, this claim is waived. ***Commonwealth v. Reid***, 99 A.3d 470, 494 (Pa. 2014).

Based on the foregoing, we conclude all of Appellant's challenges of ineffectiveness are either devoid of merit or waived. Accordingly, the PCRA court's July 7, 2014 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2015