J-S55016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :            PENNSYLVANIA
                                     :
            v.                           :
                                     :
                                     :
JAROD CAGER                        :
                                     :
            Appellant           :      No. 133 WDA 2020

Appeal from the PCRA Order Entered January 7, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013713-2011

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:       **FILED:  March 19, 2021**

Jarod Cager (Appellant) appeals from the order entered on January 7, 2020 in the Court of Common Pleas of Allegheny County dismissing his petition filed under the Post Conviction Relief Act (PCRA).[1] We affirm. Appellant brings four claims of error, with the fourth inclusive of five sub-parts:

> 1.    Whether the PCRA court erred when it found that [Appellant's] trial counsel was not ineffective for failing to call and/or interview Mr. Clayton McCray[.]
>
> 2.    Whether the PCRA court abused its discretion when it concluded that Mr. Jason Daniels' statement to Mr. Clayton McCray was not an excited utterance[.]
>
> 3.    Whether the PCRA court abused its discretion when it found that Mr. McCray's statement regarding a July 31, 2011 shooting was irrelevant to Appellant's PCRA claim[.]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

4.    Whether the PCRA court committed an error of law in finding that the following claims lacked arguable merit:

    i.    Trial counsel was ineffective for failing to move for a mistrial at Appellant's trial.
    ii.    The Commonwealth violated Appellant's constitutional rights to a fair trial and to a fair and impartial jury.
    iii.    The Commonwealth violated Appellant's constitutional rights to confront and cross-examine witnesses.
    iv.    Trial counsel was ineffective when he failed to properly cross-examine Detective James McGee.
    v.    Trial counsel was ineffective for not presenting Appellant's alibi defense.

Appellant's Brief at 10 (some capitalization omitted).

On direct appeal, this Court described the underlying facts as follows:

On August 14, 2011, Kiona Sirmons was at the home of relatives on Rochelle Street in Pittsburgh, Pennsylvania. She was joined by several friends, including Ravin Reid, Montaja Littlejohn, and Valon Pennix. Sometime later, Sirmons' boyfriend, Antwan Leake, and Jacelyn Terry joined the gathering. Upon arrival, Terry remained in the living room with the other women but Leake went into the kitchen. According to Detective James McGee, Sirmons stated in an interview on September 2, 2011 that two black males entered the residence and proceeded to the kitchen approximately 15 minutes after Leake arrived. After two or three minutes, Sirmons heard multiple gunshots and saw Appellant and Terrel Noaks run from the kitchen and exit the front door. In a recorded statement given to the police on September 9, 2011, which the Commonwealth published to the jury, Sirmons confirmed that she saw Appellant and Noaks exit the home shortly after the shooting. Sirmons also identified Appellant and Noaks in a photographic array.

At trial, none of the women present at the Rochelle Street residence recalled details of the shooting on August 14, 2011, including the identities of any males who entered or left the house other than Leake. Sirmons testified that she previously identified Appellant and Noaks as the shooters because detectives harassed her and visited her at work. She also testified that the police told her who to circle on the photographic array and she denied telling police nicknames used by Appellant and Noaks.

Leake died after sustaining four gunshot wounds during the August 14 attack. Of these, wounds inflicted on Leake's head and chest were deemed capable of causing death. A ballistics expert called by the Commonwealth testified that five shell casings recovered from the crime scene were .40 caliber Smith and Wesson casings fired from a Glock handgun. These casings matched the .40 caliber bullet fragments recovered from the fatal wounds inflicted upon Leake. The Commonwealth also called Tanner Shawl as a witness against Appellant. Shawl testified that in December 2010, approximately eight months prior to the murder, he purchased a .40 caliber Glock handgun on behalf of Appellant. Shawl further testified that Appellant selected the gun and supplied funds to purchase the firearm.

Lastly, the Commonwealth introduced testimony from a witness trained in the field of cellular telephone data analysis. This testimony established that Appellant received four calls from Leake on the day of Leake's murder. In addition, Noaks telephoned Appellant five times on the date of the crime. Four calls from Appellant's telephone on August 14, 2011 between 6:00 p.m. and 8:00 p.m. utilized a cellular tower situated in the same general area as the crime scene and Appellant's mother's residence.

At the conclusion of trial on February 4, 2014, a jury convicted Appellant of first-degree murder, 18 Pa.C.S.[ ] § 2502(a), and carrying a firearm without a license, 18 Pa.C.S.[ ] § 6106(a)(1). The jury acquitted Appellant of criminal conspiracy. On June 26, 2014, the court sentenced Appellant to life imprisonment for his murder conviction and a concurrent term of 40 to 80 months' incarceration for carrying a firearm without a license.

*Commonwealth v. Cager*, 1994 WDA 2014 (Pa. Super. Aug. 25, 2017) (unpublished) (footnotes omitted). This Court affirmed Appellant's conviction, rejecting his claims as to expert witness testimony on identification, admission of firearms evidence, and the weight of the evidence.[2] *Id.* at 4, 10.

_____

[2] Appellant's appeal rights were reinstated *nunc pro tunc* after an initial failure to file an appeal. *See Cager*, 1994 WDA 2014, at 4.

Appellant's bid for *allocatur* was denied on February 21, 2018.[3] He filed a petition under the PCRA on December 3rd of 2018. The trial court held two hearings, on September 5, 2019 and October 30, 2019, before formally dismissing Appellant's petition on January 7, 2020. This timely appeal followed.[4]

"In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." *Commonwealth v. Robinson*, 82 A.3d 998, 1013 (Pa. 2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted).

Many of Appellant's claims sound in allegations of ineffective assistance. "To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable

---

[3] *Commonwealth v. Cager*, 369 WAL 2017 (Pa. Feb. 21, 2018).

[4] Although it is unclear whether Appellant timely complied with the trial court's order per Pa.R.A.P. 1925(b), the trial court addresses the merits and thus we may as well. *See Commonwealth v. Rodriguez*, 81 A.3d 103, 105 n.2 (Pa. Super. 2013).

basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner." ***Commonwealth v. Freeland***, 106 A.3d 768, 775 (Pa. Super. 2014) (***citing Strickland v. Washington***, 466 U.S. 668 (1984); ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987)). Petitioners must show by a preponderance that their conviction or sentence resulted from ineffective assistance that, in the case's particular circumstances, so undermined the truth-finding function that no reliable adjudication of guilt or innocence was possible. ***Id.*** We begin by presuming that counsel is effective, and that not every error by counsel can or will result in a violation of a petitioner's Sixth Amendment right to counsel. ***Commonwealth v. Gribble***, 863 A.2d 455, 472 (Pa. 2004).

Appellant argues that trial counsel was ineffective for failing to call Clayton McCray. Appellant alleges that McCray would have testified that a now-deceased individual named Jason Daniels confessed to McCray that he committed the underlying shooting. Trial Ct. Op. at 4; Commonwealth's Brief at 12. The trial court concluded that Appellant did not establish an exception to the hearsay rule, and thus the testimony in question was not admissible. Trial Ct. Op. at 5-6.

Where an ineffectiveness claim hinges on the proposed testimony of witnesses who went uncalled at trial, petitioners must establish that the proposed witnesses were available and willing to testify, that counsel knew or should have known of the proposed witnesses, and that the absence of the proposed testimony so prejudiced the petitioner that they were denied a fair

trial. **Commonwealth v. Reid**, 99 A.3d 427, 438 (Pa. 2014). We now know that, even after Appellant was given an opportunity to establish the admissibility of the proposed testimony, he was unable to do so; therefore, he cannot show that he was prejudiced by his lawyer's failure to seek its admission. This claim fails.

Next, Appellant claims that the trial court erred in determining that the excited utterance exception did not apply to the proposed testimony. Appellant's Brief at 25-29. When reviewing evidentiary decisions, we apply an abuse of discretion standard. **Commonwealth v. Orie**, 88 A.3d 983, 1022 (Pa. Super. 2014). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Alicia**, 92 A.3d 753, 760 (Pa. 2014).

Fundamentally, regardless of which exception Appellant attempted to establish, he cannot establish it unless the trial court believes the facts that would support that exception. The trial court did not find that this after-the-fact "confession" had sufficient indicia of reliability, and thus concluded that its admission would have been improper. Trial Ct. Op. at 5-6. Such findings are entitled to great deference from appellate courts, who come to the record cold, as opposed to the factfinder. "The default role of appellate courts is to defer to the trial court . . . in matters of fact and credibility." **Berg v. Nationwide Mutual Insurance Company, Inc.**, 235 A.3d 1223, 1230 (Pa.

2020) (where parties agreed to proceed with cold record rather than live hearings, factual findings are nevertheless entitled to deference on appeal); ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) ("We defer to the PCRA court's factual findings and credibility determinations supported by the record."). Because Appellant has not established an abuse of discretion, this claim too must fail.

Next, Appellant argues that the PCRA court abused its discretion when it found that Mr. McCray's statement regarding a July 31, 2011 shooting was irrelevant to Appellant's PCRA claim. The PCRA court concluded that the statement lacked sufficient indicia of reliability. Trial Ct. Op. at 6. For the reasons stated above, we must afford great deference to this determination. Appellant has not established an abuse of discretion, and thus no relief is due.

Appellant also claims that trial counsel was ineffective for failing to pursue a mistrial after Juror No. 3 informed the court that she used to know Appellant's mother in the 1970's, as they grew up on the same street, and that she was aware that some of the children in that family had "been in trouble before." ***See*** Trial Ct. Op. at 9; Appellant's Brief at 30-32. However, the juror confirmed that she could be fair and impartial. Further, the trial court reports that the juror was dismissed. Trial Ct. Op. at 9. Therefore, Appellant could not have been prejudiced by this, as the juror was not present during deliberation. Appellant also claims that the jury was tainted because his co-defendant's father approached two jurors during a lunch break.

Appellant's Brief at 32. Another juror was dismissed after appearing to mouth words back and forth with Appellant's co-defendant. Appellant's Brief at 33.

The problem with these claims is that the record reflects that the trial court took them seriously and eliminated any potential source of bias or taint at the earliest opportunity. Two jurors were dismissed, as described above, and the interaction between the co-defendant's father and the jurors at lunch was minimal. The father identified them as jurors, and they instantly responded that they were not allowed to talk to him. That is the entirety of the exchange. *See* Trial Ct. Op. at 9. Crucially, the jurors were unaware that the man who approached them was related to anyone in particular; further, the entire jury was *voir dired* to ensure that no taint had arisen. *Id.* We therefore conclude that the trial court correctly determined that Appellant could not establish that any mistrial motion would have been meritorious. *See id.* at 9-10. Appellant also complains that certain outbursts and inappropriate behavior among the trial's observers may have tainted the jury, but this argument is speculative at best.[5] *See* Appellant's Brief at 33-34. No relief is due.

---

[5] Appellant seems to assume that the troublesome observers would have been associated by the jury with the defense, rather than the prosecution. *See* Appellant's Brief at 35-36. However, he has offered no evidence for why this would be so.

Next, Appellant argued that the trial court's ruling on an excited utterance deprived him of his rights of confrontation.[6]  Appellant's Brief at 38. An investigating officer testified at trial that he was one of the first officers to arrive on the scene of the shooting, and he heard women screaming.  Trial Ct. Op. at 11.  He heard one of the women say that two men with guns left the house right after the shooting.  *Id.*

As stated above, we must afford trial courts broad discretion in evidentiary rulings.  However, this claim fails for another reason, as well: it is far from clear how the excited utterance prejudiced him.  It would have been impossible to dispute the fact that a shooting occurred; therefore, there had to have been at least one shooter.  That the women said there were two shooters and that they were male is far too vague to attach any particular prejudice to Appellant.  Because we must evaluate this claim through the paradigm of ineffective assistance, Appellant must establish prejudice.  *See* ***Freeland***, 106 A.3d at 775.  Therefore this claim fails as well.

Appellant also argues that trial counsel was ineffective for failing to perform an adequate cross-examination of Detective James McGee. Appellant's Brief at 41-44.  Detective McGee's testimony was offered by the Commonwealth to counter witness Kiona Sirmons' recantation of statements made to police incriminating Appellant.  *Id.* at 41.  Appellant argues that counsel should have questioned Detective McGee about the 911 call and

_____

[6] The trial court analyzes this claim as one of appellate counsel's alleged ineffectiveness.  *See* Trial Ct. Op. at 11.

another statement Sirmons made in which she did not identify the shooters, and about allegedly coercive tactics, such as talking with Sirmons at her place of work and her home. We first observe that talking to a witness at their workplace or home is certainly less coercive than talking to them at a police facility. The trial court confirmed that the jury heard the 911 call. Trial Ct. Op. at 11. Sirmons had been impeached with inconsistent statements, and the trial court concludes that it was not unreasonable for trial counsel to avoid calling further attention to such impeachment. *Id.* at 11. Because we see no abuse in the trial court's determination that counsel pursued a reasonable trial strategy, no relief is due.

Finally, Appellant argues that trial counsel was ineffective for failing to present an alibi defense at trial. Appellant's Brief at 44-46. Apparently, Appellant's mother and father would have testified that he was at their home at the time of the shooting. *Id.* at 44-45. After offering Appellant an opportunity to explore this potential testimony at a PCRA hearing, the trial court concludes that "[c]ounsel is entitled to make a strategic decision that the unsubstantiated testimony of a clearly biased witness would not have swayed the jury in the face of considerable evidence of guilt . . . ." Trial Ct. Op. at 10. Appellant has simply failed to surmount the high bar posed by the abuse of discretion standard.

Because Appellant has failed to establish that the trial court erred in dismissing his PCRA petition, we must affirm.

Order affirmed.

Judge Colins joins the Memorandum.

Judge Bowes Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2021